### COUNTY OF CALEDONIA.

#### MAY TERM, 1849.

[Continued from Vol. 21, page 519.]

---

#### PRESENT,

HON. STEPHEN ROYCE, CHIEF JUDGE.
HON. MILO L. BENNETT, ⎫ ASSISTANT JUDGES.
HON. LUKE P. POLAND, ⎭

---

## JOSEPH FELCH v. H. C. GILMAN AND GEORGE O. KEACH.

After a highway has been laid out by the selectmen, and has been made by the town, and has been kept in repair and travelled by the public for some twelve or thirteen years, and the land owner has accepted his land damages for the laying out of the road and built his fences by the side of it, and has acquiesced during all that time in treating it as a public highway, he cannot sustain trespass on the freehold against those who go upon the road to repair it, upon the ground that the selectmen had never filed with the town clerk a certificate of the opening of the road.

When a public highway is legally laid out, the town, as incident to the right of way which they obtain, acquire the right of digging the soil and using the timber and other materials, found within the limits of the highway, in a reasonable manner, for the purpose of making and repairing the road, or bridges upon it.*

---

* See *Baxter* v. *Winooski Turnp. Co.*, *post*, Chittenden Co.

If, in repairing a highway, earth is improperly piled against the fence of the adjacent land owner, his remedy is not by an action of trespass upon the freehold, but by a special action on the case.

TRESPASS *quare clausum fregit.* Pleas, the general issue, and several pleas in bar. Trial by jury, December Term, 1848,—POLAND, J., presiding.

On trial the plaintiff introduced evidence tending to prove, that there was a highway across the farm on which he lived in Waterford, being the same premises described in his declaration, passing partly through woodland, and partly through cleared land, which had been worked and travelled for some eight or ten years; that in the cleared land the road was fenced on one side by a stone wall and on the other by a board fence; that in the woods the road was fenced on one side only, by a brush fence; that in the autumn of 1846 the defendants, and others in their employment, went upon said highway to repair the same, and cut down three maple trees, standing within a few feet of the travelled path in the woods, and used them to make a wharfing upon the lower side of the road; that they also widened the road in the cleared land, and in so doing piled the earth and soil against the board fence, standing on the lower side of the road, for several rods, so as in some places to reach as high as the top of the bottom board in the fence; and that in the same autumn, by direction of the defendant Keach, a maple tree was cut in the woods, by the side of the road, and used in repairing a bridge upon the road, which had been broken down by the plaintiff in drawing a load over it just previously.

The defendants gave in evidence a copy of the record of the laying out and survey of the road in question, by the selectmen of Waterford, in April, 1835, and also a copy of the record of the survey and laying out of a continuation of the same road, by the selectmen of Waterford, in February, 1840. The defendants also gave evidence tending to prove, that the town of Waterford constructed the road across the plaintiff's land, soon after it was laid out in 1835; that the plaintiff fenced the road about the same time, and the road had ever since been used and travelled by the public, without objection by the plaintiff, and that the plaintiff had himself used the road considerably, and that the road, from the time it

was constructed, had been included in a highway district and kept in repair by highway taxes.  The defendants also gave evidence tending to prove, that the trees cut by them stood within the limits of the survey of 1835, and so near the travelled path, that the road could not be made of sufficient width, without removing them ; that the road, at that point, was out of repair, and that the trees were needed for the purpose, for which they were used ; that the road in the cleared land was on the side of a hill, and was less than two rods wide between the fences ; that in the winter the snow drifted into the road from the upper side, so as to render it difficult to pass ; that the road was worked upon the extreme lower side of the line of the survey, to avoid the drifts, and that there was no other feasible way of avoiding that difficulty ; that the board fence, against which the earth was piled, was within the limits of the road, as surveyed in 1835 ; and that when the continuation of the road was laid out in 1840, the selectmen paid the plaintiff $13,33, for damages on account of the road laid across his land in 1835, and that he accepted the same.  It appeared, that the defendant Keach was appointed highway surveyor, and the defendant Gilman agent, to expend a certain tax upon this highway, and that they were acting in those capacities in making the repairs they did upon the road.  It was admitted, that the selectmen of Waterford had never filed with the town clerk any certificate of the opening of this road, previous to the time when the defendants made the repairs complained of by the plaintiff.

The court charged the jury, that if they found, that this road had been adopted by the town of Waterford and kept in repair for the period attempted to be proved by the defendants, that the plaintiff had accepted the damages offered him by the town and had permitted the road to be travelled, without objection, by the public, for the period attempted to be proved, and had kept the road fenced, he could not now object, that the road had not been legally opened by the selectmen, by a certificate for that purpose, and thereby make the defendants trespassers ; that if the trees cut by the defendants were within the surveyed limits of the highway, and it was necessary to remove them, in order to make the road of sufficient width, or if they were needed for repairs of the road at that place, the defendants had a right to take and use them for that purpose ; that if the

plaintiff's fence, in the cleared land, was within the surveyed limits of the road, and the earth was piled against it in making repairs of the road, the plaintiff could not maintain trespass therefor; and that, if the fence stood on the true line of the highway, but the natural formation of the land was such, as to render it necessary to build the road upon the extreme lower side of the line of the survey, in order to avoid drifts, or for other good reason, and thereby the earth was placed against the fence, as attempted to be proved by the plaintiff, the defendants would not be trespassers.

Verdict for defendants. Exceptions by plaintiff.

——————— for plaintiff.

*Peck & Colby* for defendants.

The opinion of the court was delivered by

BENNETT, J.  This is an action of trespass *quare clausum fregit.* The first question presented is, can the plaintiff sustain this action against the defendants for going upon his lands to repair the highway, upon the ground that the selectmen of the town had not filed a certificate with the town clerk of the opening of the road.  We think he cannot.  This road was laid out in 1835; it had been fenced by the plaintiff about the same time, and he had accepted his land damages, and the town had made the road and kept it in repair. It had been travelled by the public some twelve or thirteen years, and this without any objection from the plaintiff.  It would now indeed be strange, if he should be allowed to turn round and sue persons, who travel the road, or who should go on to it to repair it.  The road has in fact been recognized by the town, as a public highway, and they are bound to keep it in repair.  The plaintiff has acquiesced in treating it as a public highway, and it is now too late for him to object, that the town have not the right to repair it.

The only remaining question is, can the action be maintained in consequence of the cutting of the trees to use in the necessary reparation of the road?  No doubt the fee of the land remains in the landholder; and he may maintain trespass, subject to such rights, as are acquired under the easement, which the public get.  The public have simply a right of way, and the powers and privileges incident to that right.  We think digging the soil and

using the timber and other materials, found within the limits of the highway, in a reasonable manner, for the purpose of making and repairing the road, or bridges, are incident to the easement.    It is a common principle, that when the law gives a right, it at the same time impliedly gives what is necessary to a reasonable enjoyment of that right.   This incidental, and to some extent a contingent, right should no doubt be taken into the account in assessing the landholder's damages.   See *Jackson* v. *Hathaway*, 15 Johns. 453, *per* PLATT, J.   *Peck* v. *Smith*, 1 Conn. 103, *per* SWIFT, J.   2 Metc. 147, 151, 457, 467.

In regard to the throwing the earth against or by the side of the fence, we do not perceive, that the right to repair the road was exercised in an unreasonable manner, in that respect; and if it had been, trespass upon the freehold would not lie for such an injury. The landholder's remedy must be by a special action on the case.

The judgment of the county court is affirmed.