450 WISCONSIN REPORTS. [1859

Burns vs. The Mil. and Miss. R. R. Co.

## PATRICK BURNS vs. THE MILWAUKEE & MISSISSIPPI RAILROAD CO. et al., Appellants.

### APPEAL FROM CIRCUIT COURT, ROCK COUNTY.

Heard October 4.]                    [Decided November 9, 1859.

### *Railroads—Corporations—Estoppel—Easement.*

Where a railroad company had authority to comdemn and take land for its track, 100 feet in width, and beyond that so much as was necessary for depot and other purposes, and for the transaction of its business, condemned two of B.'s city lots, part of which was beyond the 100 feet in width ; B. appealed from the order of condemnation by the commissioners to the circuit court, and obtained the judgment of the court, fixing the value of the whole of the lots, which judgment was paid by the R. R. Co.; after which B. filed a complaint to enjoin the R. R. Co. from taking and occupying the lots beyond the 100 feet : held that B. was estopped to claim the lands, by reason of the judgment he had obtained for the value of the whole of the lots ; and that the complaint must be dismissed.

Whether a party whose lands are condemned by a railroad company for purposes for which they may take lands beyond the line prescribed for a railroad track, can in any case contest before a jury on an appeal from the award of condemnation, the necessity of such taking.   Query ?

The necessity or propriety of taking lands by a R. R. Co., cannot be determined on an appeal from the award of the commissioners who fix the value of the condemned lands.   In that appeal the question was only what is the value of the land taken.

An acceptance of the amount of the value of the land, whether by taking the amount agreed upon by the parties, or fixed by the commissioners, or the court, is also an acquiescence in the taking of the land, as much as if the owner had conveyed the same lands to the R. R. Co. by deed.

The facts in this case are so fully stated in the opinion of this court, and in the finding of the circuit court, which follows, that no further notice will be taken of them.   The cause was tried before the Hon. J. M. Keep, who found as follows :

The bill of complaint in this cause is filed to restrain threatened injuries to the real property of the complainant, and prays a perpetual injunction.   The defendants in their

answer admit that they are doing and about to consummate the several acts complained of in the bill, but justify through proceedings had under the provisions of their charter to acquire right of way, &c.

It appears that on the first day of January, 1856, the complainant was the owner of lots 23 and 24 in Smith & Bailey's addition to Janesville, and that in April following the Milwaukee and Mississippi railroad company condemned the whole of said lots and had them appraised under the provisions of their charter, from which appraisal the complainant appealed, and a trial was had thereon in this court, upon which the jury assessed the value of said lots at $1,400, for which sum a judgment was rendered against the railroad company in favor of the complainant, which was subsequently paid and receipted for by him. Under this exercise of their franchise the defendants claim the right to use and occupy the whole of said lots 23 and 24, but the complainant insists that they thereby acquire no rights beyond the limits of 100 feet which they are authorized to take for their right of way, and that his title to and interest in all that portion of said lots lying north of the 100 feet is not disturbed or affected by those proceedings. The extent of the rights acquired by the railroad company through the exercise of their franchise in condemning and appraising the complainant's lots, is really the only question in this cause. If they thereby acquired the right to use and occupy the whole of said lots, this court will not restrain them from the exercise of that right for the uses and purposes contemplated and authorized by their charter, even though such use and occupation might result in the total destruction of the house thereon and the premature burial of the complainant therein, should he obstinately persist in its occupancy against the company's rights thus acquired.

The company have designated the objects for which they took these lots, in their petition for the appointment of commissioners. In that petition they say, that in the construction of their line of road from the easterly bank of Rock river in the city of Janesville, westward to the Mississippi river, it has become and is necessary for them to take, use and occupy certain lands hereinafter described, lying and being in the county of Rock in said state, for the use of their said track and for depots and materials in constructing the same; and that they have determined to take the following described pieces or parcels of land for the purposes aforesaid, that is to say. Then follows a description of the lands taken, and

amongst them are enumerated lots 23 and 24 aforesaid, the property of complainant.

Now for what purposes did the company assume to take those lots? The bare fact that they had located their road across them created the necessity and authorized them to take the 100 feet for the use of their main tracks, side tracks, turn outs and connecting tracks, but when they go beyond the 100 feet they must show clearly and distinctly for what purpose they take, and its necessity for some of the objects contemplated by their charter. The bare resolution or declaration of the board condemning the land does not create the necessity, nor is it any evidence thereof; but the fact that the use of the land sought to be condemned is necessary for some of the purposes contemplated by its charter, must be clearly established to authorize and justify the state in the exercise of its right of *eminent domain* for the benefit of the company. The fact that the land might be convenient for the company; and that for a cattle yard, coal yard, or lumber yard, they might use it to advantage or speculate out of it, would not authorize the state to interfere and exercise this high prerogative power in their behalf. What they want for convenience and speculation, like an individual, they must purchase at an agreed price or not have at all. Here are constitutional rights involved. The rights of individuals to the enjoyment of their private property are secured and protected by constitutional safeguards, and a corporation, however powerful, has no greater constitutional power to grasp, condemn and confiscate private property, than an individual. The company say that they have taken those lots *"for the use of their track and for depots and materials in constructing the same."* Their right to the 100 feet is unquestioned. Their depot grounds are a few rods off, but not adjacent. There is no evidence to establish the fact, and but a bare pretence that these lots are needed for depot purposes, and no pretence at all that they are needed for materials. The company therefore have entirely failed to establish the necessity for taking any portion of said lots beyond the limits of the 100 feet for the track, and therefore I must regard their compulsory proceedings, so far as they assume to affect that portion of those lots lying without the 100 feet, as absolutely null and void.

But the defendants allege that the complainant, by his acts, is estopped from now setting up title to the property in question. This presents the doctrine of *estoppel in pais* in rather a novel light; but inasmuch as it is gravely insisted upon by

the defendants, it will with like gravity be considered and disposed of by the court. The case then presented is this: Here we have a powerful railroad corporation acting under the advice of their counsel, learned in the law, selected from the best legal talent in the state, taking steps in the exercise of their franchise under their charter, to compel the complainant, an humble individual, in the obscure walks of life, a poor ignorant Irishman, who writes his name with an ⋈, to sell out his little homestead against his will. To accomplish this object they invoke the sovereign power of the state in the exercise of its right of eminent domain, to seize upon and confiscate these lots to their use; the complainant, at each and every step, appearing to oppose their proceedings. At the commencement, and in all their proceedings to the end, the defendants say they take the whole lots, that they are entitled to and will have the whole. The complainant, all the way through, as firmly and resolutely, denying and opposing the whole and every part of their claim. This spirited litigation finally results in a judgment against the railroad company for the value of the whole lots, assessed by the jury at high pressure prices, which judgment is paid by the company and received and receipted by the complainant. Now, if our previous reasoning is correct, it finally turns out that these proceedings, to condemn the lots in question, were absolutely void so far as they relate to or assume to effect the land outside of the 100 feet. There is no doubt of the fact that the company have paid, and the complainant received, the full value of the whole lots, but to apply the doctrine of *estoppel in pais* against this complainant, would be to hold in effect that he, an unlearned, ignorant Irishman, adroitly laid his plans to entrap and deceive the railroad company, backed by the best legal talent in the state, upon a question of law, and he has so successfully accomplished his ends, that he has triumphed over the combined learning of the bar on a legal question, and in the end swindled the company out of the money which they have compelled him to take against his will. For the honor of the bar I cannot, and will not subscribe to such a doctrine. I think that every feature of the case goes to show that the doctrine of estoppel cannot apply. To all appearance, to say the least, the complainant has waged an honest warfare, and there is nothing in the proofs tending to show that he has held out false colors to induce the company to purchase his land. During all the litigation the company have been the aggressors. At the commencement, without consulting the

complainant, they determined how much, and what portion of his lots they would take and pay for, and in making this determination they acted at their peril, well knowing that if they assumed to take what their franchise did not authorize, in this compulsory manner, their title would not be worth a straw, and when at the end of the litigation they paid their money, this court is bound to presume that they and their learned counsel knew the law just as well as the complainant did.

A railroad company, in every instance where they call upon the state to exercise, in their behalf, the right of *eminent domain,* should show themselves clearly within the provisions of their charter, under the constitution, and if they do not, their proceedings must be held to be void. Their rights, in every instance, should be shown to be as clear and unquestionable, as the right of individuals must not, and cannot, under the constitution, be compromised by the the exercise of this high prerogative, and arbitrary power in doubtful cases.

The court, therefore, finds that the title to all that part of said lots 23 and 24, lying north of the 100 feet taken by the railroad company for their track, is still in the complainant, and that the company have acquired no right to the use or occupation thereof. And, therefore, that the defendants be perpetually enjoined from interrupting the complainant in the free enjoyment thereof.

The judgment was entered in accordance with this opinion, from which the railroad company appealed to this court.

*J. H. Knowlton,* for respondent.

*B. B. Eldridge,* for appellants.

*By the Court,* PAINE, J. This is a bill filed by the respondent, to prevent the railroad company and its agents from taking possession of, and filling up a portion of two lots in the city of Janesville, on which the respondent resides, and to which he claims title. The facts appearing from the pleadings and proofs are these; the company having the right to take land for its track to the width of one hundred feet, and beyond that, so much as was necessary for depot and other

Burns vs. The Mil. and Miss. R. R. Co.

purposes necessary to the transactions of its business, condemned the two lots in question, among other lands, upon an application which this court has held to be sufficient.   6 Wis. Rep., 514.   Commissioners were appointed, who assessed the damages of the respondent for the taking of the entire lots. From this award he appealed to the circuit court, where the appeal was tried, and he recovered a judgment against the company for the sum of $1400, being the entire value of both lots, which amount he received and discharged the judgment.

Now, in this suit the respondent sets up the right to all that part of the lots lying beyond the one hundred feet taken for the track, on the ground that it was not necessary to be taken for any of the purposes for which the company was authorized to take such outside land.   And to sustain this right, he introduced proof that the company had located its depot buildings elsewhere, and to the effect that these lots were not necessary for wasting earth, or any other proper purposes of the company.

On the other hand, the company introduced some proof that they might be used for depositing coal, lumber, and other freights upon.   But whether a party, whose lands are condemned by a railroad company for purposes for which they may take land beyond the one hundred feet, can, in any case, contest before a jury the necessity of such taking, is a question we do not deem it necessary to decide.   For even conceeding such right, we think the respondent is estopped by his own acts, from contesting it in this case.   If he might have contested it, he did not, but acquiesced in the taking.

It was urged that he resisted the whole proceeding, because he appealed from the award of the commissioners.   But this was no more a resistance to the taking, than it would have been, had he accepted their award without appeal.   The necessity or propriety of the taking could not be determined on

the appeal.   The contest was only as to what amount the re-
spondent should receive for the land.   If he wished to con-
test the right to take, it could  only have been done  by some
affirmative proceeding on his part by which that right should
be drawn in question.   His counsel contend that he may in-
stitute such a proceeding.   He has done so in this suit.   But
if he can do it now he could have done it before he proceed-
ed to obtain a judgment for the value of the whole land and
accepted the money.

When the company condemned his entire lots, conceding
his right to  contest the necessity of  taking them, there were
two  courses, either of  which he might pursue.   1. He might
institute such proceeding as was proper, to  contest the right
to take, and  might by the judgment of  the  proper tribunal,
have confined the taking to  such land as the company
might lawfully take.   Or if he did not chose to do this, he
could acquiesce in the taking, either by accepting such amount
as he could agree on with the company ; or by accepting the
award of  the commissioners ; or, if dissatisfied with that, by
appealing from their award, recovering such judgment as he
could, and accepting the amount of such judgment.   And ei-
ther of these three methods of  accepting the compensation, is
an acquiescence in the taking.   He had his election therefore
either to contest the right to take, or submit to the taking and
receive his pay.   But he could not do both.   Here he elected
to submit and take his pay for the whole land.   After doing
that, he is estopped from contesting their right to take it.   A
man might as well sue another for trespass in taking personal
property, and  after having recovered a judgment for its value
and received the money, then turn around and sue to recover
the property on the ground that the trespasser had no right to
take it.

We do not think therefore that this plaintiff was in a con-
dition to raise the question whether the land was properly

taken by the company or not. Undoubtedly these corpora-
tions must be confined to the due exercise of the powers grant-
ed them. But this rule is designed for the protection of the
public and individuals against an abuse of their powers. It
was never designed to enable an individual to deal with a
corporation and receive its money for his property, and then
reclaim the property on the ground that the corporation had
violated its charter in acquiring it. So far as he is concern-
ed, he could not raise that question for that purpose. But if
there was any violation of the charter, the state could, by a
proper proceeding, prevent or punish such abuse.

We think the respondent stands in no better position than
as though he had conveyed the lots to the company by deed
and received his pay, and then sought to reclaim them by this
proceeding.

We think the principle of the case is similar in all respects
to that of *Embury vs. Conner*, 3 Coms., 511, and that the re-
spondent by recovering and accepting the judgment for the
value of the entire lots, must be held to have acquiesced in
the taking of them.

By the charter of this company, upon their paying or ten-
dering the damages awarded by commissioners or adjudged
on appeal for land taken, the title vests in the company in fee
simple. And the respondent having accepted the amount, we
think the case stands as it would if he had given a deed.
And in either case the title would vest in the company, sub-
ject to the right of the state to proceed against it if it had vio-
lated its charter. But the individual who had received his
pay could not raise that question for the purpose of reclaim-
ing the property. See *Rutland and Burlington R. R. Co. vs.
Proctor & Odell*, 29 Verm., 93 ; *The Banks vs. Poitiaux*, 3
Rand., 136 ; *Barrow vs. Nashville and Charlotte Turnpike
Co.*, 9 Humph., 304 ; *The People vs. Mauran*, 5 Denio, 389 ;
*Leazure vs. Hillegas*, 7 Serg. & R., 313 ; *Baird vs. Bank of*

*Washington,* 11 id., 411; *Goundie vs. Northampton Water Company,* 7 Barr, 233; *Bogardus vs. Trinity Church,* 4 Sand. Ch. R., 633; *Lathrop vs. Commercial Bank of Sciota,* 8 Dana, 114.

The judgment of the court below must be reversed and the cause remanded, with directions to enter a judgment dismissing the complaint.

C. J. DIXON did not take any part in the decision of this case, as the same was tried before him at the circuit.