## STONE *v.* SOUTHERN ILLINOIS AND MISSOURI BRIDGE COMPANY.

### ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 253.   Argued March 24, 25, 1907.—Decided May 13, 1907.

Whether the statutes of a State authorize the incorporation of a bridge company to construct a bridge over a navigable river separating it from another State; whether such statutes confer the right of eminent domain on a corporation of another State, and whether such a corporation can exercise therein powers other than those conferred by the State of its creation, are all questions of state law, involving no Federal questions, and the rulings of the highest court of the State are final and conclusive upon this court.

The act of January 26, 1901, 31 Stat. 741, having authorized the construction by an Illinois corporation of a bridge and approaches across the Mississippi River, it is within the power of one of the States within which the bridge was constructed to authorize extensions thereof and connections therewith necessary and proper to make it available for the use contemplated by the statute, and although such extensions and connections were not within the plans and specifications of the bridge itself and its approaches as approved by the Secretary of War, the condemnation of land necessary for the bridge company to construct them is not in contravention of § 9 of the act of March 3, 1899, 30 Stat. 1151, making it unlawful to deviate in the construction of any bridge over navigable waters from the plans approved by the Secretary of War.

194 Missouri, 175, affirmed.

THE facts are stated in the opinion.

Mr. *Shepard Barclay*, with whom Mr. *Madison R. Smith* and Mr. *Thomas T. Fauntleroy* were on the brief, for plaintiffs in error:

The laws of Congress governing the location and limits of the bridge and approach in question are paramount.

The defendant in error has no power to condemn that part of the land lying west of the 720-foot approach, as fixed by the Secretary of War, for the purpose of constructing and operating "terminal yards" and railroad terminals, or as part of the bridge.

To be a lawful structure the bridge must be built in accordance with the plans as recommended by said board of engineers and the Secretary of War and all requirements of the act observed.

The drawing which defendant in error offered to the Federal engineers, and which the Secretary of War approved, defines the western approach at 720 feet from the western pier as shown on the map. When defendant in error submitted its map and secured its approval as an accurate delineation of the western approach to the bridge, it became bound by its own act until, at least, the Federal supervising authority approved a change. *Lake Shore &c. Co.* v. *Balt. & Ohio Co.*, 149 Illinois, 272; 30 Stat. 1151, § 9.

The legislation of Congress on this subject necessarily prohibits the operation of any local statute not in harmony therewith.

The entire approach to every such interstate bridge is considered by the legislation of Congress as subject to the supervisory control of the Federal authority. Where the bridge is once located and defined, the same cannot be changed without express authority. *In re Bridge Co.*, 108 N. Y. 483.

The acts of Congress, authorizing the construction of this bridge, operate as limitations on the area of the structure (and its approaches mentioned therein as a part thereof).

The Federal act authorizing this bridge does not grant the right of condemnation of land for the purposes of the bridge. It mentions the defendant in error, the bridge company, as "a corporation created and organized under and by virtue of the laws of the State of Illinois" (sec. 1).

Those laws do not confer on a bridge company the right of eminent domain, even in Illinois. Rev. Stats., Illinois, 1899, ch. 32, § 1, p. 433; *Illinois State Trust Co.* v. *Railroad Co.*, 208 Illinois, 420.

*Mr. Martin L. Clardy*, with whom *Mr. Alexander G. Cochran* was on the brief, for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

On March 3, 1899, Congress passed an act providing, among other things:

"That it shall not be lawful to construct or commence the construction of any bridge, etc., . . . over . . . any . . . navigable river . . . of the United States until the consent of Congress to the building of such structures shall have been obtained, and until the plans for the same shall have been submitted to and approved by the Chief of Engineers and by the Secretary of War."

The act further provided:

"That when plans for any bridge or other structure have been approved by the Chief of Engineers and by the Secretary of War, it shall not be lawful to deviate from such plans, either before or after completion of the structure, unless the modification of said plans has previously been submitted to and received the approval of the Chief of Engineers and of the Secretary of War." 30 Stat. 1151, sec. 9.

On January 26, 1901, Congress passed an act (31 Stat. 741) authorizing the Southern Illinois and Missouri Bridge Company (defendant in error), a corporation of the State of Illinois, to erect, construct, maintain and operate a bridge and ap-

proaches thereto over the Mississippi River from a point on the Mississippi River in Alexander County, in the State of Illinois, opposite the terminus of the St. Louis Southwestern Railway, at or near Grays Point, in Scott County, in the State of Missouri, or from some other convenient point on said river in said Alexander County, Illinois, to some opposite point on said river in the State of Missouri, within the distance of three miles above or below the terminus of said railway.

The bridge was to be constructed for the passage of railway trains and, at the option of the corporation, might be so constructed as to provide for the use thereof by wagons, vehicles, and the transit of foot passengers and animals at such reasonable tolls as might be approved by the Secretary of War.

It was also provided that the bridge constructed under the act and subject to its limitations should be a lawful structure and recognized and known as a post route of the United States.

Section 5 provides:

"That the approaches to the bridge built under this act shall be so designed and constructed as not to interfere with the free discharge of the river in seasons of flood; and any encroachment on the high-water cross sections by piers, solid embankments, or otherwise, which might result in unduly accelerating the high-water current at the site of the bridge, shall not be allowed."

Section 7 provides for the submission to the Secretary of War of the drawings of the bridge, piers, approaches and accessory works and a map of the location, giving, for the space of at least two miles above and one mile below the proposed site, the topography of the banks of the river and the shore lines at high and low water. The maps and drawings are to be referred to the board of officers of the Corps of Engineers, United States Army, for examination and report.

Provision is made for hearing objections to the construction of the bridge, and it is provided that the proposed bridge shall be a lawful structure only when built in accordance with the plans recommended by the Board of Engineers and approved

by the Chief of Engineers, and by the Secretary of War, and while so managed and kept in repair as to offer at all times reasonable and proper means for the passage of rafts, steamboats and other water craft under the said bridge and while said requirements are observed.

Section 10 provides for alterations and changes as may be required by the Secretary of War, in accordance with existing law, in the bridge constructed under the provisions of the act, so as to preserve free and convenient navigation. Such changes were to be made, under the direction of the Secretary of War, at the expense of the persons, companies, or corporations owning, controlling and operating the bridge.

Section 11 provides that the bridge shall be constructed under the general supervision of the Secretary of War, and no changes or alterations in the plan shall be made during the construction of said bridge or after its completion, unless recommended by the Chief of Engineers and approved by the Secretary of War.

The act makes provision for the preservation of the navigable channel during the construction of the bridge.

Section 12 provides that whenever Congress shall decide that the public interests require it, the right to order the removal of the bridge at the expense of the owners is expressly reserved, without liability for damages on the part of the United States.

Section 13 provides that if the bridge is not commenced within one year and completed within three years from the date of the approval of the act, the same shall be null and void, and the rights thereby conferred cease and determine.

The Southern Illinois and Missouri Bridge Company, in pursuance of this act, submitted its drawings and plans and the same were duly approved as required by law.

The bridge company, on the twenty-fourth day of April, 1902, filed its petition in the Circuit Court of Scott County, Missouri, for the appropriation of a strip of land containing 20.3 acres, said to be approximately 4,000 feet long and 200 feet wide, alleging that it is necessary to have a right of way

for the railway tracks, bridge and terminal yards of the company, and for the purpose of carrying out its charter privileges it is necessary to hold and own the described tract.

On trial in the Circuit Court that court held that the bridge company had no right to make the appropriation under the laws of Missouri.

From this adjudication an appeal was taken to the Supreme Court of Missouri and that court reversed the judgment of the Circuit Court, and remanded the case with directions to the lower court to appoint three disinterested commissioners to assess the damages which the defendants would sustain by the appropriation of the strip of land. 174 Missouri, 1.

Such proceedings were had, and ten thousand dollars was assessed as damages in favor of the plaintiffs in error, defendants below, and a second appeal was prosecuted to the Supreme Court of Missouri, where judgment below was affirmed. 194 Missouri, 175.

To that judgment this writ of error is prosecuted.

Many of the assignments of error involve only questions of state law, the rulings concerning which, in the Supreme Court of the State, are conclusive, and involve no substantial Federal question.

Among these may be named:

The contention that the statutes of Missouri do not authorize the incorporation of a bridge company to build a bridge across the Mississippi River;

That the laws of Missouri do not confer the right of eminent domain on a corporation of another State;

That a corporation of Illinois can only exercise in Missouri such powers as are conferred upon it by the State of its creation.

These questions involve the powers of corporations under the laws of Missouri, which are concluded by the adjudication of the state Supreme Court;

There is no contention that the statutes conferring the right of eminent domain passed by the legislature of the State of Missouri, and which its courts have decided authorize this

appropriation by the defendant in error, do not make ample provision for assessment of damages to the landowner by due process of law. Whether a given corporation comes within the law of the State, and is entitled to assert its power, presents only a question of state law.

Nor is error shown in the contention that the erection of the bridge was not begun within the year, as provided by the act, of Congress. The evidence shows that the bridge has been constructed without complaint by the Federal authorities, and, indeed, Congress has extended the time for the completion of the bridge by an act passed January 18, 1904. 33 Stat., Part 1, p. 6. It cannot prejudice any Federal right secured to the plaintiffs in error that the right of eminent domain is authorized by the State, notwithstanding the bridge was not begun within the time which Congress might have insisted upon as a condition of enjoyment of the privileges conferred.

If the record presents any Federal question at all, it rests in the contention that the appropriation in controversy is in contravention of the act of Congress, because it is an unauthorized extension of the approaches to the bridge upon the Missouri side, not included in the drawings and plans as submitted to the Secretary of War and which met with his approval as already recited.

The copy of the approved drawings in the record shows that the approach to the bridge upon the west side was shown in a series of arches extending from the river bank to a distance of 720 feet. And it is the contention of the plaintiffs in error that, in view of the act of Congress, the approach must be limited to the extent and construction shown in the plans and drawings thus approved by the Secretary of War. Indeed, it is contended that this plan, after its approval, became a limitation upon the power of the State to extend the bridge by authorizing further approaches and connections.

But we think this contention wholly untenable. The act of Congress and the powers given the Secretary of War thereunder are the result of the exertion of the constitution [1] power

conferred upon Congress to regulate commerce between the States. Federal control of bridges constructed over navigable waters is maintained because of the right to prevent obstructions to navigation and preserve such public highways as rivers for free and unobstructed use in the interest of commerce. *Bridge Company* v. *United States,* 105 U. S. 470–475, and cases therein cited.

An examination of the act of Congress under which the bridge company was authorized to construct this bridge manifests the purpose to prevent its becoming an obstruction or interference with free navigation of the river, and when the matter of approaches is specifically spoken of it is provided that they shall be so designed and constructed as not to interfere with the free discharge of the river in seasons of flood.

It is evident that the purpose of requiring the submission of plans, and their approval by the Secretary of War, was to preserve, as far as may be, the unobstructed passage of the river in the uses of navigation. To the extent that it was necessary to protect such interests, the law provides that the structure shall be unalterable and that its approaches shall be approved by the Secretary and remain unchanged without his sanction, but it certainly never was designed to destroy the usefulness of the bridge by limiting the power of the State to authorize the corporation constructing and owning it, by proper connections and other facilities, to make the bridge available for the purposes for which it was intended. The bridge and approaches as approved by the Secretary of War have not been altered. The connecting approaches and tracks are additional means of making the bridge available for the purposes intended.

As was pertinently observed by the Chief Justice, in delivering the opinion of the court in *Union Pacific Ry. Co.* v. *Chicago &c. Ry. Co.,* 163 U. S. 588, "A railroad bridge can be of no use to the public unless united with necessary appurtenances, such as approaches, tracks, depots and other facilities for the public accommodation."

If the State was deprived of its power to authorize exten- sions and connections which should make this bridge available for the common use of railroads for which it was intended, it would have been a vain thing to provide for a bridge abruptly terminating at a height and point where, without further ap- proaches and connecting facilities, its usefulness would have been destroyed.

This record shows that the point 720 feet to the west, where the approach required by the War Department ends, is at a height of some 60 feet from the ground. The structure was thence extended some distance to the crest of a bluff, thence over the lands of the plaintiffs in error to a point where the terminal yards of the bridge company are situated.

We cannot find it within the purpose of Congress, if it had the power so to do, by the terms of this act to limit the State in its right to authorize these necessary terminals and connect- ing facilities, because the plans and specifications, which fully subserved the purpose of showing the extent to which naviga- tion would be affected had been specifically approved by the Secretary of War and are not to be altered without his consent.

In our view no Federal right was taken from the plaintiffs in error by the action complained of under the state laws as interpreted by the Supreme Court of the State of Missouri, and if it may be said that the contention fairly represents a Federal question, we are unable to find merit in it.

Judgment of the Supreme Court of Missouri is

*Affirmed.*