[Civ. No. 5525.  Second Appellate District, Division Two.—October 11, 1927.]

ANNIE F. YOUNG, Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

[Civ. No. 5526.  Second Appellate District, Division Two.—October 11, 1927.]

CITY OF LOS ANGELES (a Municipal Corporation), Respondent, v. DAN MORRIS et al., Defendants; ANNIE F. YOUNG, Defendant and Appellant.

Hyams & Himrod, Meserve, Mumper, Hughes & Robertson and Timon E. Owens for Appellant.

Jess E. Stephens, City Attorney, Herman Mohr and Donald M. Keith, Deputies City Attorney, and John A. Rush for Respondents.

WORKS, P. J.—The second cause above entitled, *City of Los Angeles* v. *Morris*, No. 5526 in the files of this court, is an action for the condemnation of real property for street purposes. It was commenced pursuant to the provisions of an act of the legislature commonly known as the act of 1903 (Stats. 1903, p. 376; and, as variously amended, Act 8198, Deering's Gen. Laws 1923), and such proceedings were had that an interlocutory decree of condemnation was entered in the action. From this decree the defendant Annie F. Young, appellant here, in due time prosecuted an appeal and the interlocutory decree was affirmed (*City of Los Angeles* v. *Morris*, 74 Cal. App. 473 [241 Pac. 409]). Six months after the filing of the affirming opinion the supreme court rendered a decision in which it is now contended that questions of law were settled which strike at the very foundation of the proceedings involved in *City of Los Angeles* v. *Morris*. This decision of the supreme court was pronounced in *O. T. Johnson Corp.* v. *City of Los Angeles*, 198 Cal. 308 [245 Pac. 164]. Thereafter defendant Young made her motion in the trial court in *City of Los Angeles* v. *Morris*, pursuant to notice filed about May 18, 1926, for an order setting aside and vacating the interlocutory decree of condemnation, and also the final decree, which theretofore had been entered therein, and for an order dismissing the action. The motion was denied and the defendant Young now prosecutes her appeal from the order denying it. Mrs. Young also, after the decision in *O. T. Johnson Corp.* v. *City of Los Angeles*, and on May 4, 1926, commenced the action which is above entitled *Young* v. *City of Los Angeles*, No. 5525 in the files of this court. The purpose of the action was to quiet her title to the property attempted to be taken under the decree in *City of Los Angeles* v. *Morris*. A demurrer was interposed to the complaint as amended in this new action, it was sustained without leave to amend, and judgment was accord-

ingly rendered against the plaintiff. From this judgment Mrs. Young also appeals.

The two appeals are argued together in a single set of briefs, and it is conceded that the questions of law presented by them are identical. We may, then, look to the complaint as amended in the action to quiet title for the facts upon which a determination of the legal questions is to depend, for the pleading alleges specifically matters not to be found in an ordinary complaint in such an action. The allegations of the complaint as amended are, in part and in effect, as follows, taking them in the order in which they are presented in the pleading:

In *City of Los Angeles* v. *Morris,* which for convenience will hereafter be referred to as the first action, the "City of Los Angeles sought to condemn and have condemned and now claims that it did condemn and have condemned for street purposes, the property" of appellant and of the other defendants in the action. The city now claims the right to use for street purposes the property which ·it so claims to have condemned, and makes such claim of right to use because of such condemnation. The complaint in the first action was filed June 29, 1921, and the answer of appellant therein was filed September 29, 1921. When the first action "was brought and tried, the Pacific Mutual Life Insurance Company of California held and was the owner of a mortgage indebtedness on" the property of appellant which was sought to be condemned in the suit "and because thereof was made a defendant in said action." This mortgage "indebtedness since the entry of the final judgment in said action was voluntarily paid by some person other than" appellant "and without her consent, authority, request or confirmation." The first action was tried by jury as to appellant and the insurance company upon their demand in that behalf, and a verdict was rendered April 26, 1923. On April 27, 1923, "an interlocutory judgment or decree on said verdict of said jury was entered in said action as to the property of" appellant "and as to said mortgage in favor of" the insurance company. Appellant took her appeal from the interlocutory decree on July 11, 1923, and thereafter the decree was affirmed by the district court of appeal. At "the end of sixty days thereafter the *remittitur* in said action . . . was sent down and thereafter

filed.'' After that event the trial court ''purported and attempted to make, give and enter a final decree or judgment in said action wherein and whereby said court recited that it was adjudged and decreed that'' appellant's ''property was condemned to the City of Los Angeles'' for the street purposes alleged in the complaint in the first action. Under the various ordinances leading up to the first action ''and by virtue of said interlocutory judgment or decree and said final judgment or decree . . . the defendants now assert and claim that'' appellant's property is part of ''a public street of the City of Los Angeles'' and ''now claim and assert that said city is the owner, for street purposes, of the right to use'' appellant's property ''and for such purposes to pave and otherwise improve, and to maintain and use the same.'' After the affirmance of the interlocutory decree in the first action, after the sending down of the *remittitur* pursuant thereto, and after the entry of the final decree, ''and believing and having good cause to believe that said judgment was valid and binding'' and that the trial court had jurisdiction to render it, appellant ''received from the county treasurer of the county of Los Angeles the sum of'' $38,205.44, ''which said sum had been paid to said treasurer by the county clerk of said county, to whom the same had been paid with other money in satisfaction of said judgment . . . and who therefor satisfied said judgment.'' At that time ''there was an assessment against the remainder of'' appellant's ''property for the proposed improvement then amounting to the sum of'' $8,897.56 ''and which amount plaintiff, on the day she received said money . . . , paid to the authorities of the City of Los Angeles in satisfaction and discharge of such assessment, leaving the sum of'' $29,307.88 ''as the net amount which'' appellant ''thus received on said judgment and because thereof. . . . Whatever other moneys if any may have been paid on account of or in satisfaction of said judgment to any other person or corporation were paid without'' appellant's ''authority, knowledge, request or confirmation.''

It is of course obvious from this statement of facts that appellant, in her present situation, is remediless unless the legal questions settled and declared in *O. T. Johnson Corp.* v. *City of Los Angeles, supra,* have an application under

the facts of the first action. Notwithstanding this patent truth we find it unnecessary to decide the question whether those points do apply here. It will be understood, therefore, that in nothing we say in this opinion do we intimate that the points determined in *O. T. Johnson Corp.* v. *City of Los Angeles* either would or would not have had an application to the first action if they had been presented upon the appeal from the interlocutory decree therein.

Respondents contend that appellant having waived the points decided in the Johnson Corporation case and is estopped to urge them and is estopped, therefore, to contend for a dismissal of the first action or to maintain her action to quiet title. It is said in a standard cyclopedic publication: "An absolute want of jurisdiction of the subject matter or cause of action cannot be waived, nor can the doctrine of equitable estoppel be invoked to confer jurisdiction on a tribunal which has not jurisdiction of the subject matter. But where the court has general jurisdiction of the subject matter a lack of jurisdiction of the particular case may be waived by failure to take timely and specific objections, or an invocation of or submission to the jurisdiction may raise an estoppel to deny such jurisdiction" (15 C. J. 844). It is pertinent now to remark that the point decided in *O. T. Johnson Corp.* v. *City of Los Angeles,* and upon which appellant relies, involved a question of jurisdiction of the subject matter. The point did not, however, relate to the general jurisdiction of the trial court over suits for the condemnation of real property for street purposes, but only to jurisdiction over a particular case. That the general jurisdiction exists is true as a matter of course.

Before we cite other authority bearing upon the interesting and important question which is here presented, let us assemble briefly the facts upon which the claims of waiver and of estoppel are based. Because of the decision in the Johnson Corporation case appellant was spurred to a renewed activity in May, 1926, for it was then that the steps were initiated which resulted in the order and judgment from which the present appeals were taken. As the element of time is material to be considered in determining whether the claimed estoppel exists, it is of interest to note what period has elapsed since appellant first had the op-

portunity to present the point for which she now contends and what were the occurrences· of the interim. We state a chronology of the events which have transpired in the first action. The cause was commenced a month less than five years before appellant took the first steps toward a realization of the hope inspired in her by the decision of the supreme court in the Johnson ·Corporation case. The answer of appellant was filed four years and eight months before she presented the new point. The interlocutory decree had been on file a little more than four years. The appeal from that decree was taken two months less than four years before the new steps were taken, and the decision affirming it was filed eight months before that time. The *remittitur* went down, of course, sixty days after the decision. Thereafter, and before appellant made her motion in the first action and commenced her action to quiet title, but after the filing of the final decree in the first action, appellant accepted the money allowed her under the interlocutory decree and paid the assessment due on the property remaining to her. There is in her complaint to quiet title enough to show, also, that the mortgage on her property, held by ·the Pacific Mutual Life Insurance Company, was paid as a result of the condemnation decree and out of moneys provided by the decree for that purpose. During all these times appellant never suggested the point which she now contends is determinative of the first action.

■ We take judicial notice of the fact that a certain street intersection in the City of Los Angeles, known as the "corner" of Fifth Street and Grand Avenue, is in a business district (*Varcoe* v. *Lee*, 180 Cal. 338 [181 Pac. 223]), that Fifth Street, east of Grand Avenue, is a business thoroughfare, and that at certain times during each day it is "congested with pedestrians and vehicular travel of all kinds" (*Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335 [208 Pac. 125]). We think, upon the reasoning and authority of the two cases just cited, we also take judicial notice that Fifth Street proceeds westward from a principal part of the business district of Los Angeles to its intersection with Grand Avenue, and that the intersection is but three or four blocks distant from such part of the business district of the city. A copy of a map which is attached to the complaint in the first action, as well as the allegations of

the pleading itself, shows us that the project of which the first action was an outcome contemplates the extension of Fifth Street in a westerly direction beyond Grand Avenue. A copy of the same map is also made a part of the complaint in the action to quiet title. This plat shows us that the easterly line of the lands of appellant which are purported to have been taken by the decree in the first action as a part of the proposed extension of Fifth Street is but 829.04 feet from the westerly line of Grand Avenue. From these facts we cannot but perceive that the proposed extension of Fifth Street through appellant's lands, which are a full block in extent, is a most important improvement. If the question decided in *O. T. Johnson Corp.* v. *City of Los Angeles* were to be held applicable to the first action, and appellant were to be allowed to urge it therein and in the suit to quiet title, two possibilities would arise. This is the first: If the defendants in the first action other than appellant are satisfied with the results flowing from the decree therein and never present the point for which appellant now contends, then the extension of Fifth Street is finally accomplished as far as Flower Street, which the maps already mentioned show is an existing cross street upon which the property of appellant abuts at its easterly line. In the event above imagined the traffic which moves westward along Fifth Street from the busy center of the city must of necessity turn either north or south at Flower Street. This is the second possibility: If the point made by appellant is good as to her in the first action it is also good as to the other defendants therein. If the latter shall elect to avail themselves of the question by steps similar to those which appellant has attempted to take, or by others, if others may be imagined, then the traffic conditions at the intersection of Fifth Street and Grand Avenue must remain as they now are and large portions of the heavy traffic westward along Fifth Street must turn at Grand Avenue, either to the north or to the south. The bringing of either of these possibilities into being as an actual condition of affairs, as we are bound judicially to know, is fraught with danger to the future welfare of the City of Los Angeles. The proposed extension of Fifth Street, under the scheme which brought the first action into existence, as we are informed by the pleadings and by the maps in the two records

before us, was to run from a line 575 feet westerly from Grand Avenue, to which line there was before the first action was commenced a cul-de-sac extension of Fifth Street, to a point in another west-going street some four or five blocks to the westward, which point is outside the business district of the city. If the west-going traffic on Fifth Street, or such portion of it as it is desirable to move to the westerly parts of the city, instead of proceeding the length of the proposed extension of Fifth Street, is forced to turn either to the north or south, particularly toward the south, either at Grand Avenue or Flower Street, injurious consequences to the handling of the traffic of the city will result. A diversion of westbound traffic along Fifth Street for but one block south, either along Grand Avenue or along Flower Street, will bring it to Sixth Street, an important thoroughfare which at those points and for some distance westward is in the business district of the city. Of this condition we take judicial notice under the cases already cited. Such a diversion of traffic not only will impede the progress of that traffic itself, but it, in turn, will impede the traffic into which it is diverted, either in Sixth Street or to the southward of it, in which direction the business district extends. In connection with the length of time during which appellant has failed to present the point for which she now contends, these circumstances, we think, aid materially in determining whether she is estopped to urge the question. All the matters mentioned in this paragraph were within the knowledge of appellant, either actual or presumed.

A determination of the point for which appellant now contends, and in her favor, will compel the City of Los Angeles, if it shall adhere to its determination to extend Fifth Street, a thing naturally to be expected under the circumstances to which we have adverted, to institute new proceedings for the effectuation of the plan, with the long delay necessarily incident to such a course.

We are bound to assume that the city has expended large sums of money in the prosecution of its plan for the extension of Fifth Street, up to the point which has now been reached in its consummation. The consequence of an upholding of the point for which appellant now contends would be that the expenditure of these funds would result in a waste of the entire amount which has been expended in pur-

suit of the plan, whatever the amount may be, and whether the city should determine to put the plan into final effect or to desert it.

At the point at which we have now arrived in the preparation of this opinion it is not difficult to perceive the dire consequences to result from appellant's failure to present, in due time, the point for which she now so vigorously contends, if it were determined that it were applicable under the facts of the first case and if she were permitted to avail herself of it. The equities of the situation are plainly against appellant. The city has surely been misled to its grievous injury by the long-continued silence of appellant, and by her long submission to the jurisdiction of the courts, if she shall now be permitted to overturn the extension proceedings. Under such circumstances we are naturally diligent in an endeavor to ascertain such a state of the law as will thwart her attempt at this late day to press the point. The public welfare demands that there should be an end to the litigation.

One court has stated a general principle which may serve as an introduction to authorities dealing more specifically with the question here under examination, and the statement is quoted for that limited purpose, without a recital of the facts upon which the court based it: "The general rule as applied to courts is that jurisdiction of the subject-matter—which means jurisdiction of the class of cases to which the particular case belongs and not jurisdiction of a case within such a class—cannot be waived. The method by which jurisdiction of a particular case within the general class of cases is obtained, and any defects or irregularities in respect thereto, may be waived, and are waived unless seasonable objection is made in accordance with the established practice" (*Taylor Coal Co.* v. *Industrial Commission*, 301 Ill. 381 [134 N. E. 169]. See, also, *People* v. *Penn*, 302 Ill. 488 [135 N. E. 92]). Let us now proceed to a consideration of cases that seem, on the facts, to present situations which nearly approximate the condition evident in the present litigation, if, indeed, some of them do not exactly fit it.

In a case in which a similar question to that here presented was considered the action, which was local in character, was commenced in a county other than that in which the property involved was situated. After decree it was

attempted by certain of the parties to question the jurisdiction of the tribunal, but the court decided that "having submitted to the adjudication without questioning the jurisdiction and having received the benefits of the decree, they cannot now claim that the Huerfano district court had no jurisdiction" (*Field* v. *Kincaid,* 67 Colo. 20 [184 Pac. 832]).

A somewhat similar condition of affairs is presented by several condemnation cases. In one of these the city of New York had condemned certain property for street purposes. Many years afterward an action in ejectment was commenced for the purpose of recovering the property. In ruling that the action could not be maintained the court said on appeal: "It is insisted by the counsel for the appellant, that the laws under which this improvement was made, so far as they authorize the taking of private property for private purposes, are unconstitutional and void. This is undoubtedly true, when the power is exercised in opposition to the consent of the owner; but, when that consent is given, it is a waiver of the objection, and removes the difficulty. A party may renounce a constitutional provision made for his benefit, and, when the law which provides for a transfer of property does not require the consent to be in writing, it may be manifested by parol acts and declarations, so as to effect a transfer of the title to real estate, notwithstanding the statute of frauds. (*Bassen* v. *Brennan,* 6 Hill, 47 [40 Am. Dec. 387] ; *Embury* v. *Conner,* 3 Comst. (N. Y.) 511 [53 Am. Dec. 325].) The receipt of the money operates as an estoppel, and the damages paid have the same effect as a conveyance, and vest the title in the corporation. The consent of the plaintiff is apparent from his conduct in the matter. He evidently appeared and interposed objections to the first report made by the commissioners, and probably induced them to make the award of one thousand five hundred dollars. He had a right to object to the confirmation of the report, upon the ground, that the land was taken without his consent, and, had he done so, the report would have been set aside. (*Matter of John* v. *Cherry St.,* 19 Wend. (N. Y.) 659.) This he failed to do, and consented to receive the money without objection. The corporation was not bound to pay the money, except upon a waiver of all objections as to the title conferred, and

his receipt of the money was a waiver of the objection, and a sufficient consideration for his affirmance of the title in the corporation. He received the money after he had inclosed the land; never offered to return it; remained quiet without asserting his claim, long after the possession was surrendered to the grantee of the corporation, who paid a valuable consideration for a conveyance; allowed him to improve it, without making any claim, and left it for the plaintiff, a purchaser upon an execution sale under an old judgment, sixteen years after the land was appropriated under the corporation ordinance, to bring an action for its recovery'' (*Sherman* v. *McKeon,* 38 N. Y. 266).

The opinion in another condemnation case is largely valuable because of the authorities which the court cites: ''A payment into the clerk's office, or a tender of the damages assessed, would not conclude a defendant; for, unless he accepted the same, there would be no acquiescence on his part, and he might properly appeal, or contest the right of the plaintiff in any other manner known to the law. (*Hartshorn* v. *Potroff,* 89 Ill. 509.) But the voluntary acceptance by the defendant of the damages assessed and awarded to him by the judgment, with a knowledge of all the facts, precludes him from afterward controverting the rights of the plaintiff as established by the judgment. Nor is it material in such case that the judgment may have been erroneous, or even void. In *Kile* v. *Town of Yellowhead,* 80 Ill. 208, which was a prosecution for obstructing the highway, it was contended that the proceedings for establishing the highway were void, for the reason that they did not conform to the statute. The court said: 'After the road was ordered to be opened, appellant was paid and accepted $75, as the amount of damages awarded him by the commissioner of highways for the location and opening of the highway. This estops him from alleging that the proceedings were void.' To the same effect are *Town* v. *Town of Blackberry,* 29 Ill. 137; *Rees* v. *City of Chicago,* 38 Ill. 322; *Hartshorn* v. *Potroff, supra; Karber* v. *Nellis,* 22 Wis. 215; *Felch* v. *Gilman,* 22 Vt. 38; *Hawley* v. *Harrall,* 19 Conn. 142. In *Sherman* v. *McKeon,* 38 N. Y. 266, it was held that where real estate had been condemned and taken by the city of New York for the purpose of widening a street, and the owner accepted the damages awarded, the receipt of

the money by him was an expression of consent to the taking of the property by the city, and estopped him, and those claiming title under him, from alleging an unconstitutional taking of the property for private purposes. The same doctrine was laid down in *Embury* v. *Conner*, 3 N. Y. 511 [53 Am. Dec. 325]. In *Whittlesey* v. *Hartford etc. R. R. Co.*, 23 Conn. 421, and *Hitchcock* v. *Danbury etc. R. R. Co.*, 25 Conn. 516, it was held that where real property had been appropriated by a railroad company, and had been taken possession of and used for railroad purposes, the owner could not, after having received the damages assessed in his favor, question the regularity of the proceedings which resulted in the condemnation and assessment. In *Burns* v. *Milwaukee etc. R. R. Co.*, 9 Wis. 450, it was held that where condemnation proceedings had been had for the appropriation of two full lots belonging to the plaintiff, although more land was taken than the statutory right of way, the owner could not, after accepting the damages awarded for the entire property, question the legality of the proceedings or of the appropriation. The court said: 'We think the respondent stands in no better position than as though he had conveyed the lots to the company by deed and received his pay, and then sought to reclaim them by this proceeding' " (*Test* v. *Larsh*, 76 Ind. 452).

In a later case the view expressed in the language just quoted was adhered to by the same court in a part of its opinion which is *obiter*, but in which additional authority is cited upon the subject. The action was in trespass for breaking down certain fences. The defendants answered that the act charged was committed by a town marshal because of rights claimed to have accrued to the town under a decree of condemnation of the property involved for street purposes. The court said: "It is a general rule that, where benefits are awarded to the owner of land in proceedings to condemn, an acceptance of the sum awarded will preclude the owner from prosecuting an appeal. Elliott, App. Proc., sec. 150; *People* v. *Mills*, 109 N. Y. 69 [15 N. E. 886]; *Felch* v. *Gilman*, 22 Vt. 38; *Hawley* v. *Harrall*, 19 Conn. 142; Elliott, Roads & S. 277. Judge Elliott says, in his Appellate Procedure (section 151): 'It will be observed that in the cases in which it has been held that an estoppel exists the act necessarily affirmed the validity of the judgment.

Thus, where a party accepts money or property awarded him by a judgment, he concedes the validity of the judgment, since it is by virtue of the judgment that he obtains the money or property.' These principles have been applied by this court in proceedings similar to those involved in the present case. *Test v. Larsh,* 76 Ind. 452; *Railroad Co.* v. *Johnson,* 84 Ind. 420; *Newman* v. *Kiser,* 128 Ind. 258 [26 N. E. 1006]. In *Byer* v. *Town of New Castle,* 124 Ind. 86 [24 N. E. 578], the doctrine that one may estop himself to deny the validity of condemnation proceedings was recognized. That he may estop himself, by the receipt of the money awarded in condemnation proceedings, to deny the validity of the proceedings, was held in a full and satisfactory opinion and citation of authority in *Test* v. *Larsh, supra.* We conceive no good reason why he should, in good conscience, be permitted to receive all the benefits of the proceeding, and, while holding them, deny that the proceeding is effectual to create the burdens corresponding to such benefits'' (*Holland* v. *Spell,* 144 Ind. 561 [42 N. E. 1014]).

On appeal from a decree of condemnation the opinion of the court of last resort of another state reads, in full: ''Yell county was entitled to the condemnation of a portion of the lands of Brooks, Neely & Co., for a certain public highway over the same. The land was condemned for that purpose, and the damages caused thereby were assessed, and a county warrant was issued to them therefor, and was received and collected by them. They cannot now contest the right of the county to the land so condemned. The warrant was issued in payment of such damages, and they were not entitled to hold it to satisfy damages that might thereafter be assessed in another proceeding to condemn other lands of theirs for the same highway. Having received and collected it, they accepted it for the purpose for which it was issued, and are estopped from claiming the land appropriated for the highway, and cannot, without the consent of the county, restore their rights by the return of the money received on the warrant'' (*Brooks, Neely & Co.* v. *Yell County,* 76 Ark. 67 [88 S. W. 590]).

A case decided in another state is in a few of its features somewhat like the one now before us. A bridge company, by proceedings under the law of eminent domain, pro-

cured a decree for the condemnation of certain lands upon payment into the court of the sum of $10,000. The defendant in the action thereupon appealed to the supreme court of the state, and the decree was affirmed. An appeal was then taken to the supreme court of the United States and an affirmance again resulted. A successor in interest to the original defendant then, according to an opinion from which further quotation will be made below, ''took and received from the clerk of the circuit court of Dunklin county the said $10,000 in satisfaction of said judgment for and as compensation for said strip. In the meantime . . . the plaintiff in said condemnation proceeding, after depositing said $10,000 with the clerk of the circuit court, proceeded to and did take possession of said strip of land and built and constructed its piers, approaches, and tracks to connect its . . . bridge with the Scott county terminus of said bridge, and graded and laid its terminal tracks on said strip, and has ever since and is now occupying and asserting its right to the possession thereof under and by virtue of its said condemnation proceedings . . . '' Thereafter the successor to the defendant in the condemnation suit commenced an action in ejectment for a recovery of a part of the lands taken by the decree, and judgment was therein entered in favor of the bridge company. Upon an appeal from this latter judgment the supreme court of the state said that the appellant contended for nothing that had not been settled in the condemnation litigation and that the court might well rest its decision upon what was determined in the earlier case, but that ''it may be as well to add that two pertinent reasons suggest themselves in addition to what was said'' in the earlier decision, as grounds for a ruling in favor of the bridge company. The court then said, in part: ''When the plaintiff in this cause, after the affirmance of the judgment of this court in 194 Mo. 175 [92 S. W. 475], by the supreme court of the United States in 206 U. S. 267 [51 L. Ed. 1057, 27 Sup. Ct. Rep. 615, see, also, Rose's U. S. Notes], accepted and took down the damages awarded to it by the judgment of the circuit court of Dunklin county as damages and compensation for this very strip of land, it foreclosed forever its claim to the possession of this strip. . . . If the plaintiff . . . had accepted the $10,000 damages adjudged to it by the circuit court before

its appeal had been determined, it is obvious under the decisions of this court, said appeal would have been dismissed by this court upon the evidence of satisfaction being shown to this court. *Robards* v. *Lamb,* 76 Mo. 192. In that case Judge Norton, speaking for this court, said: 'Can a party appeal from a judgment in his favor after having accepted the fruit of the judgment and satisfaction of it?' The answer was in the negative. . . . So in this case, when plaintiff sought and obtained an order from the circuit court directing the clerk not to pay the damages, the $10,000, to [the original defendants in the condemnation case], but to pay it to them, and afterwards received said money from the clerk, it became estopped by that action, irrespective of any error in the condemnation proceedings, from further claiming the land in suit, or questioning the validity thereof, and that estoppel is just as effective against assailing said condemnation proceeding collaterally as if the estoppel had been invoked in the direct proceeding to appropriate the land in suit'' (*Cape Girardeau Co.* v. *Southern Illinois & M. Bridge Co.,* 215 Mo. 286 [114 S. W. 1084]). We note, of course, that no question of jurisdiction was involved in this action.

It must be conceded that most of the cases above cited turned upon the fact that the parties who sought to reopen or overturn judgments and decrees had accepted the benefits arising from them. There is slight language in some of the opinions indicating that a lapse of time, with attendant circumstances, will aid to a determination that those are estopped who would attempt to nullify the solemn judgments and decrees of courts after they have become, in the ordinary sense, final. If, however, there were to be found no authority even remotely touching the particular subject, we should not hesitate to declare such a rule, under a state of facts like that which is apparent in the present litigation. We think the general principles underlying the cases we have cited—which are no more nor no less than the principles of the law of estoppel itself—find a ready application to the situation in which appellant now finds herself and in which at this late day she seeks to embroil the City of Los Angeles. As we have already remarked, she by her silence—if the point she now seeks to present were good and if she were permitted to urge it—has enticed the mu-

nicipality into a veritable pitfall. Valuable time, under such a state of affairs, will have been wasted, the public funds will have been expended without beneficial result, troublesome traffic conditions which there was an attempt to cure will remain as before. As a consequence grave injury will have been entailed upon the inhabitants of the city. Under such circumstances we are not sure—although naturally we do not assume to decide the point—whether an estoppel would not have operated against appellant even if, after final decree against her in the first action, an occult prescience had prompted her to refrain from taking the money provided for her by the decree in the hope that some fortuitous circumstance—like the decision in *O. T. Johnson Corp.* v. *City of Los Angeles, supra*—might supervene to open a rift in the clouds which surrounded her. Her mere submission to the jurisdiction for so long a time, under the circumstances shown by the record, drags a salient principle of the law of estoppel into the case.

When we come to consider the nature of the point which it is claimed that appellant is estopped to assert—one relating to jurisdiction of the subject matter—much comfort is to be found in the cases which we have cited. It is decided in one of them that a party may be estopped to question the jurisdiction of a court in a particular county to pronounce judgment in an action which in strictness could have been maintained only in another county. It has been determined, also, that one may waive or be estopped to assert constitutional questions against the validity of a judgment. Decisions to the effect that a right of appeal may be waived are most important, for such a waiver necessarily precludes the presentation of any kind of question which might be urged upon the appeal. It is remarked in several of the quoted opinions that one may be estopped to question a judgment which is void.

Under the provisions of the Code of Civil Procedure regulating the exercise of the right of eminent domain a defendant who would collect the amount awarded to him by a judgment must execute a satisfaction of judgment before he can obtain it (Code Civ. Proc., sec. 1254). Appellant contends, granting that a waiver or an estoppel would result where the fruits of a judgment were taken under such circumstances, that such a consequence does not follow from

the collection of the amount of a judgment awarded in an action maintained under the provisions of the act of 1903, already mentioned. Under this act (sec. 31) no satisfaction of judgment is required to be filed before the amount awarded by a decree may be realized. If there is any difference between the two situations, as bearing upon the questions of waiver and estoppel, which we do not decide, it is not so material as to affect those questions. Certainly, the satisfaction of judgment under section 1254 is executed under the compulsion of the statute. If a defendant in an action controlled by the section is not desirous of collecting his money he may refrain from executing the satisfaction. If a defendant in an action maintained under the act of 1903 is in a similar mood he simply refrains from collecting. In each instance the affair is in his own hands.

We have already seen that appellant's mortgage to the defendant Pacific Mutual Life Insurance Company was paid out of the money provided by the decree in the first action. She is accordingly discharged of liability upon the debt which the mortgage was given to secure. In her complaint in the action to quiet title she makes tender of the money she herself collected under the decree—although the tender is claimed by respondent to be insufficient—but she does not tender the amount paid to the insurance company. This circumstance, to our minds, has a material bearing upon the questions of waiver and estoppel which are here presented. It may be that appellant was not required, as a mere matter of pleading, to make tender of the amount paid to the company, for it was not received by her but by the corporation as a separate defendant. That question will therefore be laid aside. But if appellant should now be allowed to urge, against the sanctity of the judgment in the first action, the main point for which she contends, and should wage the battle over it successfully, how is the city to be reimbursed for the amount paid to the insurance company? Could the city succeed in an action to force the reimbursement? How could appellant, if reimbursement were possible, be restored to her position as a debtor of the insurance company? Surely, this matter of the collection made by the company, of the amount of the judgment rendered in its favor, leads to most interesting ramifications.

On the whole, we are abundantly satisfied that the waiver and estoppel claimed by respondent are available to halt appellant's attempt against the judgment in the first action.

The judgment in Civil No. 5525 is affirmed. The judgment in Civil No. 5526 is affirmed.

Craig, J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 8, 1927.