[No. 8,522.  In Bank.—February 18, 1884.]

ELIZA E. ANTHONY, ADMINISTRATRIX WITH THE
WILL ANNEXED OF THE ESTATE OF MARY A. SMITH,
DECEASED, APPELLANT, v. W. H. CHAPMAN ET AL.,
RESPONDENTS.

DEED — CONSIDERATION — PRESUMPTION — PAROL EVIDENCE. — The presumption is
that the consideration of a deed of conveyance was paid by the grantee named
in the deed.  This presumption, and the express declarations of the deed in that
respect, may be overcome by parol proof, but to have that effect the evidence
must be full, clear, and satisfactory.

ESTOPPEL — EXECUTOR — PETITION — INVENTORY. — An executor who represents in
his petition for letters testamentary that certain property belonged to the estate
of the decedent, and files an inventory including such property, is not thereby
estopped from afterwards claiming the property as his own.

EVIDENCE — RECORD OF A DEED — AUTHENTICATED COPY. — An authenticated copy
of the record of a deed is *prima facie* evidence of the genuineness, due execu-
tion, and delivery of the original deed.

APPEAL from a judgment of the Superior Court of the
county of Santa Clara, and from an order refusing a new trial.

This was an action of ejectment by the administratrix of
Mary A. Smith.  The plaintiff claimed under a conveyance
from one Bird to Mary A. Smith.  The defendants claimed
that this conveyance was made to Mary A. Smith in trust for
one J. P. Smith, who paid the consideration therefor, and from
whom they derived title.  Mary A. Smith left a will, appoint-
ing J. P. Smith her executor.  He applied for letters' testa-
mentary, and in his petition represented that the property in
controversy was a portion of the estate of the testatrix, and also
included it in the inventory of the estate filed by him.  J. P.
Smith died pending the administration, and the plaintiff was
appointed administratrix with the will annexed.  The other
facts appear in the opinion of the court.

*Moore, Laine & Johnson*, for Appellant.

*Burt & Pfister*, for Respondents.

SHARPSTEIN, J.—The most important question presented by
the record is whether the finding that the consideration for the
conveyance from Bird to Mary A. Smith was furnished by J. P.
Smith, is justified by the evidence.  The deed recites that the
consideration was paid by Mary A. Smith, the grantee therein,

and while the express declarations of the deed in that respect may be controlled by parol proof alone, it is well settled that such evidence must be full, clear, and satisfactory. Nothing appearing to the contrary, the presumption is that the consideration was paid by the grantee in the deed; and while this presumption may be overcome by parol evidence, to produce that result such evidence must be of the character above stated.

In this case there is no direct evidence that the purchase price of the demanded premises was paid by J. P. Smith, or that the money paid therefor had ever belonged to him. There is evidence tending to prove that he was at one time possessed of means sufficient to pay said purchase price, and that Mary A. Smith was not. But there is no clear or positive evidence of this. Aside from evidence of her circumstances before she came to this coast, there is nothing beyond what some of the witnesses testify to her having said to them in loose conversations more or less remote from the date of said purchase to indicate that she was not able to pay for it with her own money. In *Willis* v. *Willis*, 2 Atk. 71, it is said: "There is another way of taking a case out of the statute, and that is by admitting evidence within the rules laid down by this court to show the trust, from the mean circumstances of the pretended owner of the real estate or inheritance, which makes it *impossible* for him to be the purchaser." But there is nothing in the evidence introduced by the defendant which makes it appear impossible or even incredible that Mary A. Smith was the purchaser of the premises conveyed to her. It does not appear that any of the witnesses professed to be familiar with her circumstances, or to have stood in any such relation to her as would naturally make them conversant with her affairs.

One witness testified to conversations with Mary A. Smith, in which she said "Smith had lost considerable money by not taking her advice. He then told her that in the future she might manage his business, as she had a better head than he had. . . . . She said it was easier transacting business to have it done in her name. It was Mr. Smith's money that was used all the time. She said she never did anything, however, without consulting Mr. Smith. She never claimed to have the exclusive ownership of the property." It does not appear at

what time this conversation was had, or that the property in controversy, or the purchase of it, was even alluded to in it. Another witness testified that Mary A. Smith told him "she had everything in her own name because, as a general thing, the women were smarter than the men." And further, that she never conveyed the idea to him that it was her husband's money exclusively that bought the property; and he, witness, "supposed it belonged to both of them." It does not appear what property the witness alluded to. But he said: "After the purchase of the Bird tract we didn't have much talk."

After stating that in all cases of this character the facts "must be proved with great clearness and certainty," Mr. Perry, in his work on Trusts, says: "For this purpose all competent evidence is admissible, as the admission of the nominal purchaser and grantee in the deed . . . . and even circumstantial evidence, as that the means of the nominal purchaser were so limited that it was impossible for him to pay the purchase money. But loose and equivocal facts ought not to control the evidence of deeds." (§ 137.) We are unable to find in this record any evidence of admissions made by Mary A. Smith that J. P. Smith furnished the money which was paid for the purchase of the demanded premises. Nor is it made clear by the evidence that her means were so limited that it was impossible for her to pay the purchase money. The facts relied on to establish her inability, as we view them, are "loose and equivocal." Clearly insufficient to overcome the evidence of the deed.

This conclusion is based wholly on the evidence relied upon to establish a resulting trust. If there was a conflict of evidence as to who *actually* paid the purchase money of the property we could not disturb the finding on that question. But there is not. There is no direct evidence that Mary A. Smith did not pay it; or that her circumstances were such that she could not; or that she ever admitted that J. P. Smith paid it.

The alleged trustee and beneficiary are dead. Both died before the commencement of this action. And the evidence in support of the alleged trust consists mainly of verbal statements, and admissions made by the alleged trustee. In *Kennedy* v. *Kennedy,* 57 Mo. 73, the court said, "that evidence of verbal

statements and admissions alleged to have been made by a deceased person in regard to the ownership of the money which forms the basis of such trust is, unless supported by strong corroborative evidence, as for instance that the claimant's money was placed in the hands of the deceased for investment, wholly insufficient." Otherwise but little reliance could be placed in deeds.

The appellant contends that by representing in his petition for letters testamentary of the will of Mary A. Smith, that said property belonged to her estate, and filing an inventory of her estate which included said property, J. P. Smith was estopped from afterwards claiming that it was his own. In *Carter* v. *McManus*, 15 La. An. 676, the court says "that admissions made by an executor or administrator in the course of judicial proceedings are made for the benefit of the estate represented by him, and do not conclude his individual right by way of estoppel." Another case very much in point is *Werkheiser* v. *Werkheiser*, 3 Rawle, 326. The facts in this case fall short of what is required to constitute an estoppel.

The objection to the introduction of a duly certified copy of the record of a deed from Thomas Edmonds, Jr., to Robt. J. Bell "on the ground that it was irrelevant and immaterial, and that there was no proof as to the genuineness, due execution, or delivery of the original deed," was properly overruled. The authenticated copy of the record was *prima facie* evidence of the genuineness, due execution, and delivery of the original deed.

Judgment and order reversed.

MORRISON, C. J., McKINSTRY, J., ROSS, J., MYRICK, J., and THORNTON, J., concurred.

Rehearing denied .