[L. A. No. 18316. In Bank. Oct. 29, 1943.]

Estate of KATE HANLEY, Deceased. KATHARINE G. HANLEY, Appellant, v. KATHARINE G. HANLEY, as Executrix, etc., et al., Respondents.

Laurence B. Martin and Samuel Reisman for Appellant.

F. C. Stevens and Olson & Ahlport for Respondents.

EDMONDS, J.—The First Account and Report in the administration of the estate of Kate Hanley was approved by an order filed on December 12, 1941. A notice of appeal was filed by Katharine G. Hanley, who, the court determined by the order, does not own money inventoried as property of the estate. Certain legatees under the will of Mrs. Hanley, by a motion to dismiss the appeal, have challenged the jurisdiction of this court to entertain the matter upon the ground that the notice was not filed until February 11, 1942, one day beyond the applicable statutory period.

Katharine Hanley is also executrix of the estate, but in presenting the question of her asserted ownership of the money in controversy, is represented by different counsel from the attorney who appears for her in her administrative capacity. The record shows that on December 18th the attor-

ney acting for her as executrix served upon her personal counsel a notice reciting that the order approving the account had been filed on December 17th. A few days later, according to the affidavits of her personal counsel, one of them, in a telephone conversation, was told by the attorney representing Mrs. Hanley as executrix that the date stated in the notice was correct and the time for appeal should be computed accordingly.

Late in the afternoon of February 10th, counsel upon whom the notice had been served discovered that the order was filed on December 12th, not December 17th. It was then too late to file a notice of appeal that day but one was served and filed the following morning. Since that time the appellant has proceeded in good faith with the prosecution of her appeal by the timely filing of the transcript and an opening brief. Basing her opposition to the motion upon these facts, the appellant asserts that under appropriate circumstances, such as innocent and justifiable reliance upon misrepresentations, one may be relieved from the effect of delay in filing a notice of appeal; or, adopting a different theory, the respondent whose misrepresentations were the cause of the delay may be estopped to take advantage of it by a motion to dismiss.

An appeal from an order settling the account of an executrix must be taken within 60 days from its entry. (Code Civ. Proc., sec. 939; Prob. Code, sec. 1233.) The filing of a signed decree is equivalent to entry "at length in the minute-book of the court." (Prob. Code, sec. 1221.) In examining the appellant's position, it is immaterial whether the misrepresentations concerning the date upon which the order was filed were wilful or inadvertent, whether the reliance thereon was reasonable or unreasonable, or whether the parties seeking to dismiss are acting in good faith or not. It may be assumed that the appellant has presented grounds for relief which would be sufficient if relief could be granted. But the requirement as to the time for taking an appeal is mandatory, and the court is without jurisdiction to consider one which has been taken subsequent to the expiration of the statutory period. (*Estate of Smead,* 12 Cal.2d 20 [82 P.2d 182]; *Lawson* v. *Guild,* 215 Cal. 378 [10 P.2d 459]; *Lane* v. *Pellissier,* 208 Cal. 590 [283 P. 810]; *Lancel* v. *Postlethwaite,* 172 Cal. 326 [156 P. 486]; *Estate of Brewer,* 156 Cal. 89 [103 P. 486]; *Estate of Murphy,* 36 Cal.App.2d 653 [98 P.2d 523];

*Irving* v. *Sheetz,* 26 Cal.App.2d 751 [80 P.2d 502]; *Le Cyr* v. *Dow,* 26 Cal.App.2d 459 [79 P.2d 777]; *Estate of Vizelich,* 123 Cal.App. 651 [11 P.2d 870]; *Bates* v. *Ransome-Crummey Co.,* 42 Cal.App. 699 [184 P. 39].)

█ In the absence of statutory authorization, neither the trial nor appellate courts may extend or shorten the time for appeal (*Bryant* v. *Superior Court,* 16 Cal.App.2d 556 [61 P.2d 483]), even to relieve against mistake, inadvertence, accident, or misfortune (*People* v. *Lewis,* 219 Cal. 410 [27 P.2d 73]; *Williams* v. *Long,* 130 Cal. 58 [62 P. 264, 80 Am.St.Rep. 68]; *Winchester* v. *General Cab Co.,* 8 Cal.App.2d 360 [47 P.2d 1116]; *Estes* v. *Chimes,* 40 Cal.App.2d 41 [104 P.2d 74]). █ Nor can jurisdiction be conferred upon the appellate court by the consent or stipulation of the parties, estoppel, or waiver. (Stipulation: *Land* v. *Johnston,* 156 Cal. 253 [104 P. 449]; *Langan* v. *Langan,* 89 Cal. 186 [26 P. 764]. Estoppel: *Estate of Pearsons,* 119 Cal. 27 [50 P. 929]; but *cf. Moyle* v. *Landers,* 78 Cal. 99 [20 P. 241, 12 Am.St.Rep. 22], decided when service of notice of appeal was required under Code Civ. Proc., sec. 940, prior to 1921. Waiver: *Aspegren & Co., Inc.* v. *Sherwood, Swan & Co.,* 199 Cal. 532 [250 P. 400]; *Estate of Brewer, supra; Estate of Murphy, supra.* For a full discussion of these rules, see comment, 30 Cal.L. Rev. 433, 448.) █ If it appears that the appeal was not taken within the 60-day period, the court has no discretion but must dismiss the appeal of its own motion even if no objection is made. (*Estate of Brewer, supra,* at p. 90; *Langan* v. *Langan, supra,* at p. 195; *Estate of Pearson, supra,* at p. 29; *Estate of Murphy, supra,* at p. 655; *Smith* v. *Questa,* 58 Cal. App. 1 [207 P. 1036].)

█ In strictly adhering to the statutory time for filing a notice of appeal, the courts are not arbitrarily penalizing procedural missteps. Relief may be given for excusable delay in complying with many provisions in the statutes and rules on appeal, such as those governing the time within which the record and briefs must be prepared and filed. These procedural time provisions, however, become effective *after* the appeal is taken. The first step, taking of the appeal, is not merely a procedural one; it vests jurisdiction in the appellate court and terminates the jurisdiction of the lower court. And of particular importance is the fact that the security of rights of contract, titles to property, and the status of persons rest

upon certainty in the finality of judgments occasioned by the lapse of the statutory time for the taking of an appeal.

It by no means follows that one who has failed to file a notice of appeal within the statutory time is always with-out remedy. For example, where after a judgment has been rendered against a person he is entitled to take proceedings looking to its reversal or modification and he is prevented from doing so by the fraud or duress of the other party until it is too late, or when he has been prevented from taking an appeal because of circumstances over which he has no control, he is entitled to equitable relief from the judgment. (See Rest., Judgments, sec. 125, comment b; Id., sec. 112.) Such relief may be invoked in the unusual case of fraud or hardship, without interfering with the rules governing jurisdiction of an appeal.

The motion is granted and the appeal dismissed.

Gibson, C. J., Traynor, J., and Schauer, J., concurred.

CURTIS, J.—I dissent. The proposition presented for determination is whether, in the light of the peculiar factual situation here involved, the appellant should be relieved by this court from the operation of the statute fixing the time for the taking of an appeal. While it does not appear that the erroneous statement in the notice referable to the filing date of the order approving the executrix' account was wilfully made for the purpose of misleading appellant, the natural and necessary consequence of the service of such notice upon her counsel was to induce reliance upon its positive statement of the condition of the record in the estate proceeding as affecting the time for the taking of an appeal. This erroneous representation as to the day of filing the order in question was couched in no uncertain terms and was made without qualification in circumstances implying knowledge of the true facts provocative of the definite assertion. Obviously, the inevitable gravity of the error in recital of the date of ruling, the predicate of future procedural steps, was not lessened because the inaccuracy was the result of an inadvertence. A misrepresentation inadvertently made may produce the same dire results as an erroneous statement made intentionally.

The fact that service of notice of entry of decision is not required to start the time running within which an appeal may be taken (*Cook* v. *Cook*, 208 Cal. 501 [282 P. 385]; *Lawson* v. *Guild*, 215 Cal. 378 [10 P.2d 459]; *Kraft* v. *Briggs*,

15 Cal.App.2d 667 [59 P.2d 1044]; *Nagelmann* v. *McIntyre,* 27 Cal.App.2d 621 [81 P.2d 466] does not preclude the recipient from relying with confidence upon the accuracy of the information so furnished him. If not intended as a credible representation, the notice of ruling should not have been volunteered. It was given at peril of acceptance without further inquiry as to the veracity of its positive declaration of the date of decision. The law is settled that "Where statements are such as to justify a reliance upon them, the person making them cannot excuse himself by saying that the other party need not have relied upon them; he must show that his representations were not in fact relied upon. A reason given for this rule is that the making of a representation to influence the conduct of the person to whom it is made carries with it an assurance, necessarily implied, of belief of the party making it in the truth of the affirmation." (12 Cal.Jur. § 27, p. 748.) In Pomeroy's Equity Jurisprudence, 4th ed., vol. 2, § 895, pp. 1855-1856, it is said that "whenever a positive representation of fact is made, the party receiving it is, in general, entitled to rely and act upon it, and is not bound to verify it by an independent investigation. Where a representation is made of facts which are or may be assumed to be within the knowledge of the party making it, the knowledge of the receiving party concerning the real facts, which shall prevent his relying on and being misled by it, must be clearly and conclusively established by the evidence. The *mere existence of opportunities* for examination, or of sources of information, is not sufficient, even though by means of these opportunities and sources, in the absence of any representation at all, a constructive notice would be inferred; the doctrine of constructive notice does not apply where there has been such a representation of fact." In view of this established principle, it becomes unimportant here that the court records in this estate proceeding were open for inspection by appellant or her counsel for ascertainment of the true facts essential to the timely perfection of the appeal. Under the prevailing circumstances such examination was not required.

Nor does the fact that appellant is also the executrix of the will of the decedent estop her from complaining of the misleading character of the notice of ruling and the erroneous impression thereby created. It is a rule of general application that an act done in a representative capacity will not estop

one in his individual capacity, and vice versa. (31 C.J.S. § 134, p. 402; 11B Cal.Jur. § 825, pp. 228-229.) These identities are separate entities, totally distinct. (*Anthony* v. *Chapman,* 65 Cal. 73 [2 P. 889]; *Estate of Bauer,* 79 Cal. 304 [21 P. 759].) The peculiar equities of this case add particular force to the application of the general rule here. Katharine G. Hanley was represented by different counsel in each of her capacities, and the attorney acting for her as executrix in giving the notice of ruling was in no way associated with the attorneys serving her as an individual. The independence of her respective counsel has been maintained throughout the estate proceeding, and there is no difficulty in separating her responsibility for legal actions as between her dual capacities. Counsel acting for her as an individual relied in good faith on the notice as served by opposing counsel, whose position in this proceeding, so far as the principle of distinction is concerned, was the same as though some other person than appellant occupied the status of executrix. Such situation furnishes no basis to conclude by way of estoppel the individual rights of Katharine G. Hanley in this matter.

To be considered now is the point whether the provision of the law fixing the time for taking an appeal must be enforced in all cases as it is written regardless of the circumstances of delay. Judge Elliott in his valuable work on Appellate Procedure, section 112, pages 92-93, discusses the proposition as follows: ''The rule that the court cannot enlarge the time for taking an appeal must be regarded as established, but the court may, nevertheless, relieve a party in the proper case against . . . accident. In relieving a party against . . . accident the court does not extend the time for taking the appeal by breaking down the provisions of the statute limiting the time within which appeals must be taken.'' The propriety of appellant's claim to relief is in accord with this general doctrine. Whether a misrepresentation such as is here involved be the result of inadvertence or deliberate design is immaterial insofar as its ultimate effect upon the aggrieved party is concerned. In either event the same equitable elements are present in establishing a case calling for the exercise of an appellate court's inherent power to administer justice. The fact that the respondents moving to dismiss this appeal did not join with the respondent executrix in giving the erroneous notice of ruling does not alter the principle of decision herein, for considerations of justice and good conscience preclude their taking advantage of the error

misleading appellant. To hold otherwise would permit a condition consequent of inadvertence to thwart this court's equitable control of its process, resulting in a travesty on justice and bringing the administration of the law into just reproach.

For the foregiong reasons the motion to dismiss should, in my opinion, be denied, and the appeal should proceed for decision on its merits.

Shenk, J., concurred.

CARTER, J.—I dissent. I am in full accord with all that Justice Curtis says in his dissenting opinion in this case, but I desire to discuss the problem from a different point of view from that mentioned by him.

As I understand the majority opinion, it holds that the late filing of a notice of appeal requires the dismissal of such appeal regardless of the cause of the delay in filing such notice, and that any judgment rendered by an appellate court in such a case would be void. Because, if the filing of a notice of appeal within 60 days after the entry of judgment is necessary to confer jurisdiction upon the appellate court, such court would have no jurisdiction to act in a case where such notice is filed beyond that period. This would be true even if the respondent procured the kidnapping of the messenger who was taking the notice of appeal to the county clerk's office or otherwise intercepted and destroyed such notice before it reached the county clerk's office. The same conclusion would likewise follow if the courthouse and all its occupants were destroyed by fire, flood, earthquake, or even a bomb from an enemy bomber, after the entry of judgment and before the notice of appeal was filed. Such pronouncement, in my opinion, should not be dignified by the term "legal reasoning," but should be classified as a blind adherence to precedent which is likewise unsupported by legal reasoning. The great minds which evolved the common law, and promulgated the maxim "that for every wrong there is a remedy" would find no difficulty in advancing a sound legal argument as a basis for adequate relief in such a case. But the majority opinion says that "It by no means follows that one who has failed to file a notice of appeal within the statutory time is always without remedy," and then states that "where after a judgment has been rendered against a person he is entitled to take proceedings looking to its reversal or modification and he is prevented from doing so by

the fraud or duress of the other party until it is too late, or when he has been prevented from taking an appeal because of circumstances over which he has no control, he is entitled to equitable relief from the judgment.'' Let us analyze this pronouncement: An appellant who has lost his right of appeal because of fraud or duress of the other party or who has been prevented from taking an appeal because of circumstances beyond his control, is required to bring an action in equity for relief. What sort of relief may I ask? The only answer must be that he bring an action to determine whether he had a meritorious appeal, and the trial court would be required to pass upon this question after it had already rendered judgment against him in the other action. It may be a fair assumption that the trial court would again decide the case against the appellant and he would take an appeal from the judgment which determined that the appeal which he attempted to take in the other action was not meritorious. The appellate court would then be asked to determine whether or not the appeal which the appellant sought to prosecute in the other action was meritorious, and if it so determined, the judgment in the second action would be reversed, and the trial court would be directed to award the appellant the relief to which he was entitled in the other action. The judgment obtained in the other action may have already been executed since it became final upon a dismissal of the appeal which the appellant intended to prosecute therefrom. Such a situation is incongruous, and is analogous to that depicted in the case of *Taylor* v. *Hopper,* 207 Cal. 102 [276 P. 990], where this court said at pages 103, 104:

''It seems clear upon principle that such a remedy does not exist in a case such as we are considering. The difficulty in determining the amount of damages is insurmountable. If the jury found a fraud had been committed upon plaintiff to induce her to give up her cause of action, how would it determine what amount, if any, she would have received from another jury had she not compromised her action, but had proceeded to trial? And how could damages in the instant case be assessed without some measure of what would have been accorded to plaintiff in the original action had she proceeded to trial? A well-reasoned case (*Urtz* v. *New York Central etc. Co.,* 202 N.Y. 170 [95 N.E. 711]) has considered this identical problem. The plaintiff therein alleged that upon the death of her husband caused by the negligence of the defendant, she had been induced by false and fraudulent repre-

sentations as to the facts to enter into an agreement compromising her right of action for $500 and she sought recovery of damages for the fraud practiced upon her. The action was not to enforce or vacate the compromise, but to recover the actual pecuniary loss alleged to have been suffered by plaintiff by being induced to enter into the compromise. The court said: 'The jury were bound, having found the fraud, to determine whether the plaintiff was injured through the fraud, and, if injured, the sum of her damages. In case the right of action had no value, she had gained by the transaction and was not injured. It had no value whatever if the true state of facts disclosed that it was an invalid and non-existing claim, or, in other words, that the defendant was not negligent, or, if the defendant was negligent, that the intestate was not free from contributory negligence. If, however, the true state of facts would have established that the defendant was negligent and the intestate free from contributory negligence, then the plaintiff had a valuable right of action, the acquirement of which through the fraud may have injured her. Until the jury found the real facts and that they created a valid claim against the defendant, they had not a basis for estimating the damages the plaintiff had sustained. The action is not to enforce or vacate the compromise, but to recover the actual pecuniary loss sustained by the plaintiff. *An alleged value of the claim based upon the accident and the death or facts sufficient to warrant the reasonable belief of the plaintiff that she had a just claim is of a nature too speculative and wagering to be recognized by the law in this action for fraud.'* "

In the case of *Taylor* v. *Hopper, supra,* and in the New York case of *Urtz* v. *New York Central etc. Co.,* cited therein, plaintiff sought to recover in a separate action for fraud perpetrated by the defendant in inducing her to compromise a claim for damages for personal injuries and wrongful death as the result of the negligence of the defendants in the respective actions. It was squarely held in both of these cases that the cause of action for damages which was the subject of plaintiff's claim could not be litigated in a separate action based upon a cause of action for the fraudulent loss of such claim. If the reasoning in the case of *Taylor* v. *Hopper, supra,* is sound, and it appears to constitute the settled law of this state, as its soundness has not been questioned by any subsequent decisions, and it has been twice cited with approval

(*Ramsey* v. *Penry,* (1942) 53 Cal.App.2d 773 [128 P.2d 399], and *Campbell* v. *Birch,* (1942) 19 Cal.2d 778 [122 P.2d 902]), then the rule announced in the majority opinion is clearly erroneous and the two pronouncements cannot stand in the realm of jurisprudence without doing violence to consistency and harmony in their application.

Let us assume that instead of claiming that she was defrauded in compromising her damage claim, the plaintiff in the case of *Taylor* v. *Hopper, supra,* had tried her cause in the superior court based upon her cause of action for damages and a judgment had been rendered against her, and she was prevented from taking an appeal from such adverse judgment as the result of the fraud or duress of the defendant or other circumstances beyond her control, and she thereupon commenced an action in equity for relief from the injury suffered as the result of being prevented from taking an appeal. Certainly the situation would be the same as that depicted in the decision of this court in said case, and if the rule therein announced would be applied, she would not be entitled to relief even though it were established beyond controversy that she had been prevented from prosecuting her appeal as the result of fraud or duress by the defendant or other circumstances beyond her control.

The effect of the holding in the majority opinion is that an appellate court may be deprived of jurisdiction of a cause as the result of fraud perpetrated by a party to said cause, and that the injured party is relegated to an action in the superior court for a determination of whether or not such fraud has been perpetrated, and if so, what relief the injured party is entitled to. Both of these pronouncements are diametrically opposed to settled principles of law. First, it is settled law that an appellate court must determine its own jurisdiction (*People* v. *Lewis,* 219 Cal. 410 [27 P.2d 73]; *Wilbur* v. *Donohoe Kelly Banking Co.,* 10 Cal.2d 473 [75 P.2d 514]; 2 Cal.Jur. 767), and it necessarily follows that it must determine whether or not it has lost jurisdiction of a cause because of the fraudulent conduct of one of the parties thereto; and second, that an appellate court may not be deprived of jurisdiction of a cause because of the fraud perpetrated by a party thereto.

Taking up the first proposition, it is settled that when a notice of appeal is filed, the superior court loses jurisdiction and the cause is thereby transferred to the appellate court

having jurisdiction thereof, and it is for the appellate court which has jurisdiction of such appeal to determine whether or not the appeal has been properly taken and what disposition should be made thereof. Nothing a trial court can lawfully do or fail to do can deprive an appellate court of its power to determine its own jurisdiction in any cause in which jurisdiction is conferred upon such appellate court by the Constitution and statutes of this state. Therefore, it is illogical to say that when a party has been prevented as the result of fraud of the adverse party from perfecting his appeal from a judgment of the trial court, he must seek redress for that fraud in a trial court which has already decided the cause adversely to him.

Speaking to the second proposition, that an appellate court cannot be deprived of its jurisdiction of a cause as a result of the fraud perpetrated by one of the parties thereto, it is settled that where the judgment and the consequent sending down of the remittitur has been secured by fraud or imposition, or where the appellate court has been led astray so as to decide a case under a misapprehension as to the true facts, the court never loses jurisdiction to recall the remittitur and again consider the merits of the case. (*Isenberg.* v. *Sherman,* 214 Cal. 722 [7 P.2d 1006].) At pages 725 and 726 of the last cited case this court said:

"There can be no doubt that, in a proper case, this court has power to recall a *remittitur*. Under ordinary circumstances, it loses jurisdiction of a cause when the *remittitur* has been sent to and filed in the court below. This is so because the purpose of the *remittitur* is to return to the court below the cause which has been brought up on appeal, and when the *remittitur* has been duly filed in the court below, the cause is pending in that court, and not in this court. Stated in another way, this court has no appellate jurisdiction over its own judgments and it cannot review or modify them after the cause has once passed from its control by the issuance of the *remittitur*. (*Leese* v. *Clark,* 20 Cal. 387, 388, 417.) However, that rule has no application to a situation where the judgment of this court and the consequent sending down of the *remittitur* has been secured by fraud or imposition, or where the court has been led astray so as to decide the case under a misapprehension as to the true facts. If such be shown to be the case, this court may recall the *remittitur*. The theory upon which this power is exercised is not that the

court, in this manner, resumes jurisdiction over a cause, but that the court has never lost jurisdiction, because an order secured by fraud and false suggestion is a nullity and cannot be deemed to be the order of the court. It therefore follows that in such a case the court has never lost jurisdiction. The case of *Trumpler* v. *Trumpler*, 123 Cal. 248 [55 P. 1008], discusses the principles involved at some length. At page 252, it is stated:

" 'The general principles governing the jurisdiction of this court over a case which has been here, after the issuance of *remittitur*, and the power of the court to recall a *remittitur*, have been well settled. They were first elaborately stated in the case of *Rowland* v. *Kreyenhagen*, 24 Cal. 52. In that case, the court, having stated that as a general rule this court cannot exercise any jurisdiction over a case in which a *remittitur* has been issued by its order and filed in the court below, said as follows: "But this general rule rests upon the supposition that all of the proceedings have been regular, and that no fraud or imposition has been practiced upon the court or the opposite party; for if it appears that such has been the case, the appellate court will assert its jurisdiction and recall the case. Against an order or judgment improvidently granted, upon a false suggestion, or under a mistake as to the facts of the case, this court will afford relief after the adjournment of the term; and will, if necessary, recall a *remittitur* and stay proceedings in the court below. This is not done, however, upon the principle of resumption of jurisdiction, but upon the ground that the jurisdiction of the court cannot be divested by an irregular or improvident order. In contemplation of law, an order obtained upon a false suggestion is not the order of the court and may be treated as a nullity. If, under color of such an order, the proceedings have in part found their way back to the court below, yet in law they are considered as still pending in the appellate court, and that court may take such steps as may be necessary to make the fact and law agree. These views are fully sustained by the numerous authorities cited on the argument by counsel for appellant." . . . The same rule has been declared in *Hanson* v. *McCue*, 43 Cal. 178; *Bernal* v. *Wade*, 46 Cal. 640; *Holloway* v. *Galliac*, 49 Cal. 149; *People* v. *McDermott*, 97 Cal. [247] 249 [32 P. 7]; *In re Levinson*, 108 Cal. 450 [41 P. 483, 42 P. 479].' "

The argument advanced in the majority opinion in regard

to the desirability of securing finality of judgments is equally applicable to a case in which the finality of the judgment is predicated upon the going down of the remittitur from the appellate court as it is to the time within which a notice of appeal should be filed after the entry of judgment. If the intervention of fraud can prevent the finality of a judgment in one case there is no sound reason why the same rule should not apply in other cases.

None of the cases cited in the majority opinion involved a situation where a party had been prevented by fraud perpetrated by the adverse party from filing his notice of appeal within the time provided by statute, and I have been unable to find any case within this jurisdiction involving a factual situation of this character. Neither do any of the cited cases involve duress or disclose that the party desiring to appeal was prevented from doing so because of circumstances over which he had no control. The most that can be said of the cases relied upon in the majority opinion is that some of them involve mistake or inadvertence on the part of the appellant himself, which presents an entirely different situation than where the filing of the notice of appeal is prevented by the conduct of the adverse party as is disclosed by the record in this case. Most of these cases contain the bald statement that the filing of a notice of appeal within the statutory period is mandatory and jurisdictional without any discussion as to what is meant by the term jurisdiction.

In this action the essential question presented is the effect of section 939 of the Code of Civil Procedure which requires that an appeal shall be taken within 60 days after the entry of judgment. In order for the appellate court to *acquire* jurisdiction of a *particular case,* the jurisdiction of that court must be *invoked* in some manner. The manner of invoking it is the subject of legislative enactment. It is firmly established that the mode of *procedure* for *invoking* jurisdiction of the appellate court in a particular case is the filing of the notice of appeal. (2 Cal.Jur. 416.) It has been stated repeatedly that the procedural requirements for invoking the jurisdiction of the appellate court are themselves jurisdictional and that the time within which an appeal must be taken is jurisdictional. (2 Cal.Jur. 393-6.) It becomes necessary to determine the *kind* of jurisdiction to which reference is made, that is, whether it is absolute jurisdiction of the subject matter, which cannot be conferred by consent, waiver, or estoppel,

or some other kind of jurisdiction. In determining whether or not the appellate court had jurisdiction in the instant case, the kind of jurisdiction of which we are speaking must be clarified. Assuming that absolute jurisdiction over the *subject matter* may not be conferred by consent, waiver, estoppel, or any conduct of the parties, it cannot be doubted that the Supreme Court had general appellate jurisdiction over the *class* of cases to which the instant case belongs. (Cal. Const. VI, sec. 4; Code Civ. Proc., sec. 963; Prob. Code, sec. 1240.) While it may be that the requirement that an appeal must be taken in 60 days from the entry of judgment (Code Civ. Proc., secs. 939, 940) is a jurisdictional requirement, it is not jurisdictional in the sense of jurisdiction over the *subject matter*. It is a *procedural* jurisdictional prerequisite that must be met to *invoke* the jurisdiction of the appellate court. It is the procedural process by which the appellate court *acquires* jurisdiction. It is *not a limitation* on the *general appellate jurisdiction* over the *subject matter*. Hence, an objection based upon irregularities in the procedural jurisdiction may be waived or the party estopped to assert them. It does not consist of consenting to jurisdiction over the subject matter.

It was said in *Young* v. *City of Los Angeles*, 86 Cal.App. 13, 17 [260 P. 798], quoting with approval from 15 Corpus Juris 844: "An absolute want of jurisdiction of the *subject matter* or cause of action cannot be waived, nor can the doctrine of equitable estoppel be invoked to confer jurisdiction on a tribunal which has not jurisdiction of the subject matter. But where the court has *general jurisdiction of the subject matter a lack of jurisdiction of the particular case may be waived by failure to take timely and specific objections, or an invocation of or submission to the jurisdiction may raise an estoppel to deny such jurisdiction.*" (Emphasis added.) And at page 21, quoting with approval from *Taylor Coal Co.* v. *Industrial Commission*, 301 Ill. 381 [134 N.E. 169]: "The general rule as applied to courts is that jurisdiction of the *subject matter—which means jurisdiction of the class of cases to which the particular case belongs* and not jurisdiction of a case within such a class—cannot be waived. The *method* by which jurisdiction of a particular case within the general class of cases is *obtained,* and *any defects or irregularities in respect thereto, may be waived,* and are waived unless seasonable objection is made in accordance with the established

practice." (Emphasis added.) The distinction is manifest from those cases holding that appellate jurisdiction over the subject matter may not be conferred in instances where the order from which the appeal is taken is *not an appealable order*. (*Brooks* v. *Calderwood*, 19 Cal. 124, 125; *Sherman* v. *Standard Mines Co.*, 166 Cal. 524 [137 P. 249]; *Rossi* v. *Caire*, 189 Cal. 507 [209 P. 374].) Obviously in such cases the appellate court had no jurisdiction over the subject matter because the order from which the appeal is taken does not belong to the class of orders over which the appellate court has jurisdiction. Another illustration would be an appeal to this court from a judgment of a justice's or municipal court. This court would have no jurisdiction over the *subject matter* of such an appeal because it has no such jurisdiction at all and none could be conferred by the parties. A determination on the merits by this court in either case would be *void* and subject to collateral attack at any time. However, it is not to be supposed that a final determination by an appellate court on the merits even though the notice of appeal was late, where the lateness is entirely overlooked by the court and the parties, would be a *void* judgment and subject to collateral attack at any time in the future.

It follows, therefore, that the 60-day time requirement within which an appeal should be taken is no more than procedurally jurisdictional or a specification of the procedure for invoking the appellate jurisdiction which may be extended by the conduct of the parties. Most of the cases on that subject are not contrary to these views. In *Bornheimer* v. *Baldwin*, 42 Cal. 27, the only question was whether the pendency of an appeal from an order denying a new trial postponed the running of the time. The court did no more than declare that the time limit was "peremptory." The same comment is applicable to *Henry* v. *Merguire*, 111 Cal 1 [43 P. 387]. *Williams* v. *Long*, 130 Cal. 58 [62 P. 264, 80 Am.St. Rep. 68], holds only that the running of time is not tolled by the death of respondent, and it is merely declared that the statute is "jurisdictional and mandatory" not defining the first term. (To the same effect is *Estate of Turner*, 139 Cal. 85 [72 P. 718]; *County Bank* v. *Jack*, 148 Cal. 437 [83 P. 705, 113 Am.St.Rep. 285]; *Shank* v. *Blackburn*, 61 Cal.App. 577 [215 P. 559]; *Moore* v. *Douglas*, 132 Cal. 399 [64 P. 705]; *Duncan* v. *Ramish*, 142 Cal. 686 [76 P. 661]; *Pogue* v. *Ball*, 4 Cal.App. 406; *Swafford* v. *Board of Education*, 127

Cal. 484 [59 P. 900]; *Contra Costa County* v. *Soto,* 138 Cal. 57 [70 P. 1019]; *Estate of Campbell,* 141 Cal. 72 [74 P. 550].)

The case of *Estate of Brewer,* 156 Cal. 89 [103 P. 486], did not mention or discuss the foregoing distinction. It relies upon *Towdy* v. *Ellis,* 22 Cal. 650, 651, which merely held that acknowledgment of service of the notice of appeal did not *constitute a waiver* of the lateness of the filing. Nothing was said about jurisdiction, and *Langan* v. *Langan,* 89 Cal. 186 [26 P. 764], and *Estate of Pearsons,* 119 Cal. 27 [50 P. 929], do not discuss the distinction. The same comment is applicable to *Lancel* v. *Postlethwaite,* 172 Cal. 326 [156 P. 486]; *In re Fisher,* 75 Cal. 523 [17 P. 640.] *Aspegren & Co., Inc.* v. *Sherwood, Swan & Co.,* 199 Cal. 532 [250 P. 400], merely followed *Estate of Brewer, supra,* without discussion.

In my opinion, this court should apply the same rule to a case where it is claimed that a party has been prevented by fraud, duress or other cause beyond his control from filing his notice of appeal within the time provided by law as has been applied by this court in cases where the issuance of a remittitur has been procured through fraud or imposition upon the court or the adverse party, which would require this court or the appellate court having jurisdiction of the appeal to determine whether or not a factual situation has been presented which has prevented the appellant from perfecting his appeal in accordance with the provisions of the statute and upon determining that such factual situation exists, the appellant be permitted to proceed with the prosecution of his appeal in accordance with the Rules on Appeal adopted by the judicial council of this state.

In my opinion the motion to dismiss the appeal in this case should be denied.

Appellant's petition for a rehearing was denied November 22, 1943. Shenk, J., Curtis, J., and Carter, J., voted for a rehearing.