Filed 5/31/24  Liberty v. Nat. Automobile Safety Council, Inc. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LOUIS ALLEN LIBERTY,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>NATIONAL AUTOMOBILE<br>SAFETY COUNCIL, INC.,<br><br>      Defendant and Appellant. | A167619<br><br>(San Mateo County<br>Super. Ct. No. CIV538106) |

Respondent Louis Allen Liberty sued two men he tried to start a business with along with a company they formed without him, appellant National Automobile Safety Council, Inc. (NASC).  His complaint did not specify the amount of damages he sought.  When the company failed to respond to the complaint, a default was entered, and the trial court ultimately entered a default judgment.  In this appeal from the judgment, NASC argues that the trial court exceeded its jurisdiction by awarding an amount not alleged in Liberty's complaint.  We agree and reverse.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

The following allegations are taking from Liberty's first amended complaint.  In 2010, Liberty had the idea to gather information about used cars sold at auction, identify those that might have been sold without proper

1

disclosures, and offer legal representation to defrauded buyers. Liberty, who is an attorney, worked with two men, William Robert Sutton (a licensed car dealer) and Larry Maloney (who had computer expertise), to create a company to implement the idea. They began business operations to test the concept, and Liberty accepted as clients purchasers who wanted to sue dealers over the condition of the vehicles they had bought.

The three men worked with a law firm in September 2011 to address "specific legal challenges" the proposed business faced "in a systematic way." (Capitalization omitted.) But, according to the complaint, that same month, Sutton, Maloney, and an attorney with the law firm "misappropriated" Liberty's business concept. Sutton stole paper files related to Liberty's plans, operations, and potential clients; and Maloney stole intellectual property, including access to the "massive vehicle databases." The attorney then created appellant NASC, a California corporation.[1] Sutton and Maloney were its officers.

Sutton, Maloney, and NASC sued Liberty in 2013 for breach of contract and other claims related to how the parties had agreed to be paid as part of Liberty's original business plan. Apparently as part of discovery in that separate action, Liberty learned that the attorney the men had worked with had incorporated NASC in Delaware with himself (the attorney), Sutton, and Maloney as officers. The separate matter was tried in May 2017, and a judgment of around $348,000 was entered against Liberty.

---

[1] As explained in further detail below, NASC was ultimately suspended in California. After judgment was entered, the company was reinstated. But since Liberty registered the NASC name while the company was inactive, NASC adopted a new name, CarBack.com, Inc. To avoid confusion, we refer to the company by its original name, NASC.

While that separate lawsuit was pending, Liberty and six other plaintiffs[2] initiated this lawsuit in April 2016 by suing NASC, along with Sutton, Maloney, and other defendants who were later dismissed from the case. As amended, the complaint alleged causes of action for invasion of privacy, misappropriation of trade secrets in violation of the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.), misappropriation of business opportunity and expectancy, trespass to chattels, conversion, negligence, and breach of contract. The complaint sought "damages in an amount to be proven at trial," plus punitive damages. No specific dollar amount was requested.

According to Liberty, it was difficult to serve defendants, because Sutton and Maloney "disappeared" after the complaint was filed and closed NASC's Redwood City office. Liberty claimed, and Sutton later disputed, that Sutton was served in 2018. In any event, Sutton's default was entered that same year. But Liberty was unable to locate Maloney and NASC until June 2021, when Maloney was personally served in San Jose in his individual capacity and as an agent of NASC. The proof of service describes Maloney as the "last listed registered agent of FTB/SOS suspended corp." (Capitalization omitted.) After NASC failed to answer the complaint, Liberty sought an

---

[2] The complaint names as plaintiffs Liberty, his law firm, and five individuals who were alleged to be Liberty's clients. One of the plaintiffs was later dismissed because he died and no one substituted in as a party. There is no indication that any of the other plaintiffs ever participated in this lawsuit. Liberty testified during the prove-up hearing that the California State Bar brought charges against him based on the parties' controversy, so it may be that he was unable to represent the other plaintiffs. Although the judgment was entered in favor of "Plaintiffs," none of the other plaintiffs are a party to this appeal.

entry of default against the company and Maloney, which the court entered on August 19, 2021.

By order filed on October 14, 2021, the trial court entered an order to show cause why the complaint should not be dismissed for failure to bring the matter to trial within five years (Code Civ. Proc., §§ 583.310, 583.360)[3] or for failure to prosecute the action within three years (§ 583.420, subd. (a)(2)(A)). In his response, Liberty argued it would have been a waste of judicial resources to have a prove-up hearing for Sutton alone, and that he planned to pursue one for all three defendants now that they all had defaulted.

It is unclear how the trial court ruled on the order to show cause. But in January 2022, Liberty sought a judgment against Sutton, Maloney, and NASC. He submitted a supporting declaration requesting a total of $10,176,666.67 in damages, plus $750 in costs.

In March 2022 NASC, Sutton, and Maloney filed a motion to set aside their defaults and to permit them to file a motion to dismiss the action for failure to serve them within three years of filing (§§ 583.210(a), 583.250, subd. (a)(1)) and for failure to bring the matter to trial within five years (§ 583.360). The following month, voluntary dismissals were entered against Sutton and Maloney, and when Liberty opposed the motion to set aside default, he argued that the motion was moot as to them.

As for NASC, Liberty contended that it had been a suspended corporation in its home state of Delaware since March 2015 and that the California Secretary of State likewise had suspended NASC from doing business in California. Liberty argued that NASC thus lacked capacity to defend itself. (Rev. & Tax. Code, § 23301 [suspension of organization].) The trial court denied the request to set aside the defaults as to Sutton and

---

[3] All unspecified statutory references are to the Code of Civil Procedure.

4

Maloney as moot, and it denied the request as to NASC since it was suspended and lacked capacity to defend the action. The court scheduled a prove-up hearing for October 2022.

Liberty submitted a "case summary" in support of a default judgment that sought far less than his previous submission. He sought "nominal damages" of $1,000 for the alleged invasion of privacy of each client whose attorney-client files were stolen. He also sought $1 million for misappropriation of trade secrets, $1 million for trespass to chattel, $1 million for negligence, plus $1 million in punitive damages.

Liberty testified at the prove-up hearing that Sutton, acting on behalf of NASC, took files with "sensitive attorney-client information" related to five individuals, all of whom "had nothing to do with Sutton or Maloney or NASC." Liberty said he "tried to put a value on it, between a thousand and $2500," and further said, "other than that, I don't have any evidence as to the value. It would just be a common sense kind of evaluation." He also testified that he, Sutton, and Maloney had expected each case to be worth about $3,500, and that Liberty would be entitled to a third of that under their agreement. Liberty said that in the separate action against him, Sutton valued NASC between $3 million to $5 million, and Maloney valued it at $50 billion. Liberty testified that "a reasonable value of the business—you know, let's say it's $3 million. You know, I'm never going to collect. But let's say $3 million, and so 1 million is what I'm asking for. Just to be reasonable."

The trial court issued a written decision that awarded part of the relief Liberty had requested. It awarded nominal damages of $100 per plaintiff for invasion of privacy. It also concluded that Liberty had proven his causes of action for misappropriation of trade secrets and breach of

contract/misappropriation of files and electronic information. It determined that Liberty was entitled to one third of the $3,500 that each case file was worth, and that he was thus entitled to $169,215, since around 145 case files had been stolen. But it concluded that Liberty had not proven his causes of action for misappropriation of business opportunity and expectancy, trespass to chattels, and negligence; and it further concluded that he had failed to establish his entitlement to punitive damages. Judgment in the amount of $169,415 was entered in November 2022.

In January 2023, NASC notified the trial court that the corporation had been "fully revived in California" and could exercise all of its corporate powers. Sutton later submitted a declaration stating that NASC (now CarBack.com, Inc., see fn. 1, *ante*), had satisfied its tax liability in California and thus was currently "fully revived and in good standing."

On January 17, the company filed a motion to set aside the default and default judgment under section 473, subdivisions (b) and (d). It argued that the default judgment was void for three independent reasons: (1) the trial court exceeded its jurisdiction when it awarded damages in excess of the amount alleged in the operative complaint, (2) the complaint's allegations were inconsistent with the court's findings since the complaint did not allege any conduct by the company itself, and (3) the court had lacked jurisdiction to conduct a prove-up hearing or enter a default judgment since the company had not been served with the complaint within three years of its filing (§ 583.250, subd. (a)(1)). NASC further argued that the judgment was based on perjured testimony since Liberty's statements at the prove-up hearing were inconsistent with testimony he offered in the separate lawsuit against him. Finally, it argued that the entry of the default and default judgment were the result of mistake and/or surprise (§ 473, subd. (b)) because the

6

company's agent reasonably believed that the lawsuit would not proceed since the complaint was not served within three years and because it had not been brought to trial within five years.

Liberty opposed the motion to vacate. He contended that NASC had not established that it had been revived in its home state of Delaware, and it was therefore questionable whether it was able to appear in this matter. In reply, NASC submitted evidence that the company had been revived in Delaware and had been in good standing there since at least September 7, 2022.

A minute order indicates that a hearing was held on March 8, 2023, and the matter was taken under submission. Before the trial court issued a ruling, NASC on April 14 appealed from the default judgment it had sought to vacate. By order filed on May 22, the trial court ruled that NASC's motion to vacate was moot since the court lost jurisdiction when the company appealed.

## II.
### DISCUSSION

### A. *Liberty's Motion to Dismiss Is Denied.*

Before we turn to the merits of NASC's appeal, we first deny the motion to dismiss that Liberty filed in lieu of a respondent's brief. Liberty attested in his motion that he searched Delaware Secretary of State records on December 4, 2023, and learned that NASC had not been in good standing since March 2, 2023, before the notice of appeal was filed. He attached a document that purports to show that the status of National Automobile Safety Council, Inc. was "AR Delinquent, Tax Due." He contended NASC lacked capacity to pursue its appeal.

NASC opposed the motion. It explained that the notation "AR Delinquent, Tax Due" simply means that a corporation has not yet filed its

7

annual report and that taxes are due.  And it provided a certificate of good standing from the Delaware Secretary of State dated December 6, 2023, along with an updated entity search report indicating that the company had paid its taxes and was in good standing.

As we are loath to dismiss an appeal based on uncertified and uncertain hearsay business records from another state, we deny Liberty's motion to dismiss.

### B. *This Appeal Is Properly Before Us.*

Although neither party raises the issue, we first address whether this court has jurisdiction.  (See *Estate of Hanley* (1943) 23 Cal.2d 120, 123 [appellate court lacks jurisdiction to consider untimely appeal and must dismiss on its own motion even if untimeliness not raised by parties].)  We conclude that we do.

A party must file a notice of appeal 60 days after the clerk of the superior court serves a notice of entry of the judgment.  (Cal. Rules of Court, rule 8.104(a)(1)(A).)[4]  Here, the clerk filed an affidavit of mailing the default judgment the same day judgment was entered, November 29, 2022.  This means the normal deadline to appeal was January 30, 2023 (62 days after notice was mailed, since the 60th day fell on a weekend, rule 1.10(a), (b)).

But the deadline to file a notice of appeal is extended where, before the deadline to appeal, a party files "a valid notice of intention to move–or a valid motion–to vacate the judgment."  (Rule 8.108(c).)  If a party files such a motion, the deadline to appeal from the judgment is extended until the earliest of:  (1) 30 days after an order denying the motion is served, (2) 90 days after the first notice of intention to move (or motion) is filed, or

---

[4] All rule references are to the California Rules of Court.

(3) 180 after entry of judgment. (Rule 8.108(c)(1)–(3).) If NASC's motion to set aside the default and default judgment filed on January 17, 2023, was such a motion, then the company appealed within the normal deadline to appeal (rule 8.104(a)(1)(A)). Since the trial court did not rule on the motion (rule 8.108(c)(1)), the earliest of the two remaining options was April 17, 2023 (rule 8.108(c)(2), 90 days after the company filed its motion, as opposed to May 30, 2023, 180 after the judgment, rule 8.108(c)(3)). NASC filed a notice of appeal on April 14, 2023, before the April 17 deadline.

In its order entered after the filing of the notice of appeal, the trial court noted that NASC's motion to set aside the default and default judgment had been "brought pursuant to Code of Civil Procedure Section 473 — and not as a post-judgment motion to vacate under Section 663." This suggests that the court thought that NASC's motion was not a motion to vacate that would extend the deadline to appeal under Rule 8.108(c). Any such belief would have been mistaken. The Advisory Committee Comment to the rule provides that there are "two distinct statutory motions to vacate a judgment:" (1) a motion under section 663 *and* (2) a motion to vacate a judgment because of mistake, inadvertence, surprise, or neglect under section 473, subdivision (b). (Advisory Committee Comment, 23 Pt. 3 West's Ann. Court Rules (2017 ed.) foll. Rule 8.108, p. 325.) A motion under section 473, such as NASC's motion to set aside the default and default judgment, is considered a motion to vacate under the rule. NASC's appeal thus was timely.

### C. *The Default Judgment Is Void Because It Awarded Damages Not Requested in the Operative Complaint.*

On the merits, we agree with NASC that the trial court exceeded its jurisdiction when it awarded damages not included in Liberty's complaint.

9

Section 580, subdivision (a), provides, "The relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint." This is a "bright-line rule" that is "strictly construed 'in accordance with its plain language'—'a plaintiff cannot be granted more relief than is asked for in the complaint.' [Citation.] A default judgment greater than the amount specifically demanded in the complaint is void as beyond the court's jurisdiction." (*Airs Aromatics, LLC v. CBL Data Recovery Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1018 (*Airs Aromatics*).)[5] In *Airs Aromatics*, the plaintiff alleged that the amount sought was estimated to be more than $25,000 and requested damages in an amount to be proved at trial. (*Id.* at p. 1016.) The plaintiff ultimately obtained the defendant's default, and the trial court entered a default judgment in the amount of more than $3 million. (*Ibid.*) The appellate court held that the judgment was void for having exceeded the amount alleged in the complaint. (*Id.* at p. 1020.)

Liberty here requested "damages in an amount to be proven at trial," without specifying an amount. Section 580 "requires plaintiffs to have alleged their 'relief' in terms of dollars if they are to receive monetary recovery." (*Sass v. Cohen* (2020) 10 Cal.5th 861, 864.) The purpose of the statute is " 'to guarantee defaulting parties adequate notice of the maximum judgment that may be assessed against them.' " (*Ibid.*, quoting *Greenup v. Rodman* (1986) 42 Cal.3d 822, 826.) Because the trial court here awarded Liberty an amount not specified in the complaint, the judgment is void. In light of this conclusion, we need not reach NASC's arguments that the

---

[5] Section 580, subdivision (a), provides an exception where a complaint seeks punitive damages and provides a statement that complies with section 425.115. (*Airs Aromatics*, *supra*, 23 Cal.App.5th at p. 1018.) It does not appear that Liberty provided such a statement, and the trial court concluded that punitive damages had not been established in any event.

judgment is void because it relied on a cause of action not alleged against the company, or that the judgment is not supported by sufficient evidence.

The question of a remedy remains. Where a default judgment is vacated, the appellate court may remand to the trial court to allow the plaintiff to amend the complaint to state the full amount of damages it seeks. (*Sass v. Cohen*, *supra*, 10 Cal.5th at pp. 868, 891–892; *Airs Aromatics*, *supra*, 23 Cal.App.5th at p. 1025.) But NASC also argued below, and argues again on appeal, that the trial court was required to dismiss the action since it was not served within the three-year time limit set forth in section 583.210, subdivision (a). (See § 583.250, subd. (a)(1) [if service of complaint is untimely, "[t]he action shall not be further prosecuted and no further proceedings shall be held in the action"].) The trial court did not rule on this issue before NASC filed its notice of appeal.

The trial court also did not rule on NASC's argument that the underlying default should be vacated since its failure to respond to the complaint was the result of mistake and/or surprise. Nor was the trial court able to address the argument that Liberty sought a judgment based on perjured testimony. We conclude that the best course is for the trial court to address these issues in the first instance.

## III.
### DISPOSITION

Liberty's December 4, 2023 motion to dismiss is denied.

The default judgment entered on November 29, 2022, is vacated. The case is remanded to the trial court for further proceedings.

Appellant shall recover its costs on appeal.

11

_____

Humes, P.J.

WE CONCUR:

_____

Banke, J.

_____

Langhorne Wilson, J.

_Liberty v. National Automobile Safety Council, Inc._  A167619